**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------------------X

PAUL GOODMAN,                                                           :

               Plaintiff,                                        :

          -against-                                        :    Case No.: 08-cv-2851

MARTIN WADE, NOLAN QUAN, BLAIR MILLS, BROADCASTER, :    (Stanton, J.)
INC., GARY HERMAN, BRUCE GALLOWAY, THOMAS KIKIS,
KIKIS FAMILY FOUNDATION, WILLOW CREEK CAPITAL :
MANAGEMENT, TRINIDAD CAPITAL MASTER FUND, LTD.,
AARON BROWN, ANDREW GARRONI, STRATEGIC :
TURNAROUND EQUITY PARTNERS, LP (CAYMAN) and
DIGITAL CREATIVE DEVELOPMENT CORPORATION,         :

              Defendants.                                        :

----------------------------------------------------------------------------------X

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------------------X

MICHAEL GARDNER,                                                    :

             Plaintiff,                                         :    Case No.: 08-cv-2850

         -against-                                         :    (Stanton, J.)

MARTIN WADE III,                                                       :

              Defendant.                                         :

----------------------------------------------------------------------------------X

**JOINT MEMORANDUM OF LAW OF DEFENDANTS**
**BROADCASTER, INC., NOLAN QUAN, MARTIN WADE, AND BLAIR MILLS**
**IN SUPPORT OF THEIR MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

LOEB & LOEB, LLP
Michael P. Zweig (MPZ-5318)
Eugene Licker (EL-0334)
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendant Broadcaster, Inc.*

HOWREY LLP
Michael Armstrong (MA-8570)
153 East 53rd Street, 54th Floor
New York, New York 10022
(212) 896-6500

*Attorneys for the Defendants*
*Nolan Quan, Martin Wade, and Blair Mills*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF RELEVANT FACTS ................................................ 4

ARGUMENT ............................................................................................ 11

I.      BOTH DEFAMATION ACTIONS SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6) AND
FOR LACK OF JURISDICTION AND IMPROPER SERVICE PURSUANT
TO F.R.C.P. 12(b)(2) .................................................................... 12

     A.      NEITHER GOODMAN NOR GARDNER SUFFICIENTLY STATE
A CLAIM FOR DEFAMATION........................**Error! Bookmark not defined.**

        1.      Motion to Dismiss Standard.................................................. 12

        2.      Pleading Standards in Defamation Actions ........................... 13

        3.      The Statements Complained of in the Goodman and Gardner
Actions are Non-Actionable Expressions of Opinion............. 15

        4.      Statements in the Goodman and Gardner Actions are Not
Capable of a Defamatory Meaning Because They Fail to Allege
the Requisite Injury to the Plaintiffs ..................................... 20

     B.      IN BOTH ACTIONS: SERVICE WAS IMPROPER AND
PERSONAL JURISDICTION IS ABSENT........................................ 25

        1.      Improper Service of Process of the Summons and Complaint in
Goodman and Gardner Warrants Dismissal of the Actions
Under 12(b)(5) ..................................................................... 27

        2.      Lack of Personal Jurisdiction................................................ 25

     C.      GOODMAN FAILS TO STATE A CLAIM FOR PRIMA FACIE
TORT ....................................................................................... 23

     D.      GOODMAN FAILS TO STATE A CLAIM FOR NEGLIGENCE................... 24

     E.      GOODMAN FAILS TO STATE A CLAIM FOR INJURIOUS
FALSEHOOD............................................................................ 25

Page

II.  THE TWO DEFAMATION ACTIONS SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA ........................................................... 29

  A.  Unlike New York, the Central District Of California is a Proper Forum for the Two Actions ............................................................................... 29

  B.  In Light of the Related Actions Already in the Transferee Forum, the Interests of Justice, Judicial Efficiency, and the Convenience of the Parties and Witnesses Favor Transfer to the Central District of California ........................................................................................................ 31

    1.  Where there are Related Actions, Trial Efficiency and the Interests of Justice Are Often the Compelling Factors. .......................... 32

    2.  Convenience of Witnesses. ................................................................... 37

    3.  Locus of Operative Facts ...................................................................... 38

    4.  Location of relevant documents and the relative ease of access to sources of proof .................................................................................. 39

    5.  Convenience of the Parties .................................................................... 39

    6.  Weight accorded to plaintiff's choice of forum .................................... 40

CONCLUSION ................................................................................................................ 41

# TABLE OF AUTHORITIES

Page(s)

CASES

Anayanwu v. Columbia Broadcasting System, Inc.,
 887 F. Supp. 690 (S.D.N.Y. 1995) .......................................................................26

Ansorian v. Zimmerman,
 215 A.D.2d 614, 627 N.Y.S.2d 706 (2d Dep't 1995) ...........................................16

Arochem Int'l, Inc. v. Buirkle,
 767 F. Supp. 1243 (S.D.N.Y. 1991) (Stanton, J.) ................................................12

Baytree Capital Assocs., LLC v. Quan,
 No. 08-1602, No. 08-2480, 2008 U.S. Dist. LEXIS 32429 (S.D.N.Y. April 18,2008) ... Passim

Bell Atl. Corp. v. Twombly,
 127 S. Ct. 1955 (2007) ..........................................................................................11

Belly Basics, Inc. v. Mothers Work, Inc.,
 95 F. Supp. 2d 144 (S.D.N.Y. 2000).....................................................................19

Berman v. Informix Corp.,
 30 F. Supp. 2d 653 (S.D.N.Y. 1998)................................................................28, 32

Best Van Lines, Inc. v. Walker,
 490 F.3d 239 (2d Cir. 2007)...................................................................................25

Brian v. Richardson,
 87 N.Y.2d 46, 637 N.Y.S.2d 347 (1995) ..................................................... 16, 18-19

Butler v. Delaware Otsego Corp.,
 203 A.D.2d 783, 610 N.Y.S.2d 664 (3rd Dep't 1994)...........................................27

Carnegie Int'l Corp. v. Grant Thornton LLP,
 No. 24-C-00-002639, 2006 WL 990960 (Md. Cir. Ct. March 30, 2006) ...............14

Clemente v. Impastato,
 274 A.D.2d 771, 711 N.Y.S.2d 71 (3rd Dep't 2000).......................................... 21-22

Columbia Pictures Indus., Inc. v. Fung,
 447 F. Supp. 2d 306 (S.D.N.Y. 2006) (Stanton, J.) .................................... 31, 34-36

Conradt v. NBC Universal, Inc.,
 536 F. Supp. 2d 380 (S.D.N.Y. 2008)...................................................................12

Page(s)

Coultman v. Nat'l R.R. Passenger Corp.,
    857 F. Supp. 231 (S.D.N.Y. 1994) .......................................................35

Dillon v. City of New York et al.,
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) ................................13

Dworin v. Deutsch,
    2008 U.S. Dist. LEXIS 13655 Civ. 13265 (S.D.N.Y. Feb. 22, 2008) ........................ 11, 20-22

Ello v. Singh,
    531 F. Supp.2d 552 (S.D.N.Y. 2007) ............................................. 14-15

Friends of Falun Gong v. Pacific Cultural Enter., Inc.,
    288 F. Supp. 2d 273 (E.D.N.Y. 2003) ..................................................26

Gardner v. Wade,
    08-2850 ["Gardner"] ............................................................... Passim

Goodman v. Broadcaster,
    08-2480 .............................................................................. Passim

Goodman v. Wade,
    08-02851 ["Goodman"] ............................................................ Passim

Herbert Ltd. P'Ship v. Elec. Arts, Inc.,
    325 F. Supp. 2d 282 (S.D.N.Y. 2004) ..................................................38

Hernandez v. Graebel Van Lines,
    761 F. Supp. 983 (S.D.N.Y. 1991) ..................................................31, 39

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007) ............................................................12

Jammys Int'l, Inc. v. Chips and Technologies, Inc.,
    No. 89 Civ. 8331, 1990 U.S. Dist. LEXIS 10173 (S.D.N.Y. Aug. 6, 1990) (Stanton,
    J.) ................................................................................... Passim

Lakeside Concrete Corp. v. Pine Hollow Bldg. Corp.,
    104 A.D.2d 551, 479 N.Y.S.2d 256 (2d Dep't 1984), aff'd, 65 N.Y.2d 865 ........................22

Lee v. Bankers Trust,
    166 F.3d 540 (2d Cir. 1999) ............................................................12

Levin v. McPhee,
    119 F.3d 189 (2d Cir. 1997) ..................................................... 13, 15-16

Page(s)

M'Baye v. World Boxing Ass'n,
      429 F. Supp. 2d 652 (S.D.N.Y. 2006).....................................................................22

Mann v. Abel,
      10 N.Y.3d 271, 2008 WL 762262............................................................... 15-17

Nat'l Union Fire Ins. Co. v. Chua,
      No. 90 Civ. 7491, 1991 U.S. Dist. LEXIS 4281 (S.D.N.Y. Apr. 4, 1991) (Stanton, J.)..........35

Nat'l Union Fire Ins. Co. v. Turtur,
      743 F. Supp. 260 (S.D.N.Y. 1990) (Stanton, J.).........................................32, 34, 36

O'Brien v. Alexander,
      898 F. Supp. 162 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996)..............................28

Pisani v. Westchester County Health Care Corp.,
      424 F. Supp. 2d 710 (S.D.N.Y. 2006).............................................................12, 19

Rappaport v. VV Publishing Corp.,
      163 Misc. 2d 1, 618 N.Y.S.2d 746 (N.Y. Sup. Ct. 1994)..................................17, 19

Rinaldi v. Holt, Rinehart & Winston, Inc.,
      42 N.Y.2d 369, 397 N.Y.S.2d 943 (1977).........................................................12, 17

Rosenberg v. MetLife, Inc.,
      8 N.Y.3d 359, 834 N.Y.S.2d 494 (2007).................................................................14

Royal & Sunalliance v. British Airways,
      167 F. Supp. 2d 573 (S.D.N.Y. 2001)....................................................................37

Slade v. Met. Life Ins. Co.,
      255 A.D.2d 130 679 N.Y.S.2d 390 (1st Dep't. 1998).............................................16

Steinhilber v. Alphonse,
      68 N.Y.2d 283, 508 N.Y.S.2d 901 (1986)........................................15-16, 18-19

Sterling Doubleday Enters. L.P. v. Marro,
      238 A.D.2d 502, 656 N.Y.S.2d 676 (2d Dep't 1997)............................................20

Summit v. U.S. Dynamics Corp.,
      No. 97 Civ. 9224, 2000 U.S. Dist. LEXIS 5453 (S.D.N.Y. Apr. 26, 2000)................ 36-37, 40

The May Dep't Stores Co. v. Wilanksy,
      900 F. Supp. 1154 (E.D. Mo. 1995)........................................................................23

Themed Restaurants, Inc. v. Zagat Survey. LLC,
      21 A.D.3d 826, 801 N.Y.S.2d 38 (1st Dep't 2005)...............................................27

Page(s)

Tucker Anthony, Inc. v. Bankers Trust Co.,
No. 93 Civ. 0257, 1994 U.S. Dist. LEXIS 128 (S.D.N.Y. Jan. 7, 1994)........................... 31-32

USA Interactive v. Savannah Air Center, LLC,
No. 02 Civ. 3659, 2002 U.S. Dist. LEXIS 14476 (S.D.N.Y. Aug. 7, 2002) (Stanton,
J.)......................................................................................................................................29

Vangarelli v. Witco Corp.,
No. 90 Civ. 6794, 1991 U.S. Dist. LEXIS 1721 (S.D.N.Y. Feb. 11, 1991) (Stanton, J.)........32

Varsity Spirit Fashions & Supplies, Inc. v. I.L.P., Inc.,
No. 03 Civ. 2069, 2003 U.S. Dist. LEXIS 21142 (S.D.N.Y. Nov. 20, 2003) (Stanton,
J ......................................................................................................................................32

WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.,
No. 00 Civ. 6558, 2001 U.S. Dist. LEXIS 16757 (S.D.N.Y. Oct. 18, 2001) ...................30, 38

STATUTES

18 U.S.C. §§1961 et seq.............................................................................................................3

28 U.S.C.§ 1391(a)(2) (2008)....................................................................................................30

28 U.S.C. § 1404(a) .............................................................................................................28, 31

CPLR § 301.............................................................................................................................25

CPLR § 302(a)(1) ...............................................................................................................24, 30

CPLR § 302(a)(2) and (a)(3)...............................................................................................24, 30

CPLR § 308(2).........................................................................................................................22

CPLR § 311.............................................................................................................................22

New York's Business Corporation Law §720 .......................................................................3, 33

R.C.P. 12(b)(2).........................................................................................................................11

R.C.P. 12(b)(6).........................................................................................................................11

OTHER AUTHORITIES

Federal Rule of Civil Procedure 8(a)(2) ..................................................................................11

Page(s)

Federal Rules of Civil Procedure 4(h)(1), (3) and 4(e)(1) ........................................................22

http://www.baytreecapital.com/partners.php ...........................................................................21

Rule 12(b)(2) .........................................................................................................................25

In March 2008, this Court accepted as "related actions" four cases, each of which was filed by the respective plaintiffs within a 45-day period:  <u>Baytree Capital Assocs. v. Quan, et al.</u>, 08 Civ 01602 ["Baytree"]; <u>Goodman v. Broadcaster, et al.</u>, 08 Civ 02480 ["<u>Goodman § 720 v. Broadcaster</u>"]; <u>Goodman v. Wade</u>, 08-Civ-02851 ["Goodman"]; and <u>Gardner v. Wade</u>, 08-Civ-2850 ["Gardner"].  On April 18, 2008, two of these related actions (<u>Baytree</u> and <u>Goodman v. Broadcaster</u>) were transferred by Decision and Order of this Court to the District Court of the Central District of California.  Defendants Broadcaster, Inc. ("Broadcaster"), Nolan Quan, Martin Wade, and Blair Mills respectfully submit this joint memorandum of law in support of their motions to dismiss the remaining two related actions (<u>Goodman</u> and <u>Gardner</u>) or, in the alternative, to transfer those actions to the Central District of California.

## PRELIMINARY STATEMENT

These two actions – both of which purport to seek recovery for defamation – together with the <u>Baytree</u> and <u>Goodman § 720 v. Broadcaster</u> actions, comprise the barrage of ill-motivated litigation brought by plaintiffs, which defendants contend has but one goal: to harass and intimidate their targets.  The defamation actions that are the subject of the instant transfer motion revolve around contextual facts identical to the facts at issue in the Transferred Actions, and as this Court has ruled, those facts emanate primarily from California..  Thus, consistent with this Court's ruling on the motion to transfer those cases, the remaining two cases should be transferred as well.

Transfer, however, need not occur since the defamation claims are meritless on their face and should be dismissed.  Each allegedly defamatory utterance appears in a filing with the United States Securities and Exchange Commission (the "SEC").  Such filings are, at the very least, qualifiedly if not absolutely privileged.  The statement about which Goodman

complains is to the effect that he was relieved of his position on the Broadcaster Board "without cause" by shareholders who believed that he lacked the expertise to direct the Company in its current circumstances. Goodman also alleges that he was fired because he accused certain persons of misconduct (as he asserts in <u>Goodman § 720 v. Broadcaster</u>). However, the only allegedly defamatory statement about him he identifies is the expression of the shareholders' collective opinion that he lacked experience and expertise in the matters facing the Company as it sought to revise its business plan. Such opinion is privileged and not actionable. While Goodman does not allege that the shareholders were wrong in the opinion they held regarding his lack of experience in managing media companies, such statements are, in any event, not defamatory on their face. Goodman's defamation claim therefore should be dismissed.

The defamation claim brought by Gardner is, if it is possible, even more attenuated. Gardner's action arises from correspondence between Martin Wade, Broadcaster's CEO, and a second removed director, Vincent Orza, who had requested that a letter he wrote to Wade be made part of Broadcaster's Form 8-K SEC filing. Wade noted in his reply correspondence that Orza had aligned himself with Gardner, who was not an officer or director of the Company, but who had nonetheless pressed for the Company to engage in certain transactions which, in Wade's opinion as well as the opinion of a majority of the Board, were not in the best interests of the Company. Both pieces of correspondence were appended, as required, to the SEC filing. Gardner now claims that these statements, and others like it, defamed him. Once again, the alleged defamatory statements are protected opinion, not defamatory, and not even untrue. Gardner's defamation claim likewise should be dismissed.

While these suits are vacuous on their face, which warrants their dismissal, there is much about the way that the plaintiffs in these actions have proceeded, which corroborates

defendants' belief that these strike suits are motivated by another agenda.   Goodman has included as defendants numerous improperly named parties (against whom a basis for liability is not even pretended to be set forth); he has failed properly to serve these parties; and despite numerous requests from defendants, and a representation by Goodman to the Court, he has refused to supply affidavits of service.   In the <u>Gardner</u> case, service was only effected on Wade through his being lured to New York City, ostensibly for a settlement meeting in early March 2008.   The meeting was very brief and entirely unsuccessful, but at its conclusion Wade was served by Gardner's counsel with the Complaint in the <u>Gardner</u> action.

In addition, each of the defamation actions appears to have been orchestrated by Goodman and Gardner, respectively.   Goodman contacted the SEC and, it appears to defendants, lobbied the SEC to seek more detailed information from Broadcaster.   It was that more detailed information, ostensibly sought by Goodman, upon which Goodman now purports to sue. Similarly, in the correspondence from Orza that led to the <u>Gardner</u> suit, Orza explicitly reminded Wade of the requirement that the correspondence be appended to Broadcaster's SEC filing. Broadcaster's response, which was also appended to the SEC filing, forms the basis of the <u>Gardner</u> action.   In sum, these two ill-motivated and ill-conceived actions should be dismissed, or if not dismissed, transferred to the Central District of California as the Court before which all of the facts and legal issues common to the four cases can be jointly adjudicated.

## STATEMENT OF RELEVANT FACTS

The Two Recently Transferred Actions

   The now-transferred <u>Baytree</u> shareholders' derivative action alleges securities fraud, breach of fiduciary duty by Broadcaster's officers and directors, corporate waste, unjust enrichment, conversion of corporate assets and self-dealing, and violations of civil RICO, 18 U.S.C. §§ 1961 <u>et seq</u>.  The second transferred action, <u>Goodman v. Broadcaster</u>, brought by Paul Goodman, is similarly a derivative-type action, pursuant to New York Business Corporation Law § 720.  It alleges similar fiduciary breaches by Broadcaster officers and directors, corporate waste, and improper related-company transactions.  Goodman's suit also challenges the allegedly improper issuance of certain "Earn Out Shares," which Goodman says improperly led to his removal from the Board by a vote of consenting shareholders ("Consenting Shareholders").

  Each of these actions are based on the same false premises: (1) that the FTC case uncovered a fraudulent scheme involving unjustified payments and "traffic" generation; (2) that various defendants engaged in self-serving, undisclosed related-party transactions that enabled them to drain millions of dollars of Broadcaster assets for their personal benefit; and (3) that the "Earn Out Shares" implicated in the shareholder vote to remove Goodman and Orza should be voided because they were earned improperly, and that the shareholder vote would not have carried but for these shares.

The Goodman Defamation Action

   Goodman's defamation action is based on statements made in a Schedule 14C Information Statement filed with the SEC in response to a specific SEC request for clarification of a prior filing.  It is reasonably believed (<u>see</u> Declaration of Leslie Marlow, Esq. ("Marlow Decl."), dated May 20, 2008, annexed hereto) that the SEC request was prompted by a letter

from Goodman himself.  Goodman commenced his defamation action by filing a Summons with

Notice on or about January 16, 2008, prior to commencing his B.C.L. § 720 derivative action.

Shortly thereafter, Goodman sought a preliminary injunction and filed an affidavit in support of

his application for an ex parte Order to Show Cause with Temporary Restraints, seeking to

enjoin defendants from filing Broadcaster's Schedule 14C Information Statement with the SEC.

Goodman alleged that the statements made by Broadcaster in its Schedule 14C – statements that

were required under the federal securities laws to effect Goodman's removal as a director of

Broadcaster – were defamatory.  New York State Supreme Court Justice Tolub granted an <u>ex</u>

<u>parte</u> prior restraint that lasted seven days, but following the parties' appearance on the Order to

Show Cause, Justice Tolub denied the requested preliminary injunction in its entirety and

vacated the temporary order.

Broadcaster subsequently demanded and received the Complaint in this action.[1]

Goodman asserts claims of defamation per se, prima facie tort, negligence, and injurious

falsehood, alleging that he was defamed by Broadcaster's statements in its Schedule 14C

Information Statement and the amendments thereto (collectively, the "14C").[2]  <u>See</u> Goodman

Compl. ¶¶ 35-56.  Goodman alleges that statements in the 14C were false and reflected on

Goodman's "business judgment, honesty, integrity, virtue and reputation."  <u>Id.</u> ¶¶ 17, 18-24, 30,

35.  Goodman further alleges that his removal as an independent director from Broadcaster was

the product of a conspiracy between Defendants Martin Wade, Nolan Quan, Blair Mills, and

Andrew Garroni to seize control of Defendant Broadcaster.  <u>Id.</u> ¶ 16.  Goodman claims that

---

[1] When a plaintiff serves a summons without a complaint, as Goodman did, the defendant may serve, pursuant to N.Y. CPLR § 3012(b), a written demand for a complaint.  However, a demand for a complaint does not constitute an appearance in the action.  N.Y. C.P.L.R. 3012(b)

[2] Broadcaster filed the Preliminary Information Statement on Schedule 14C with the SEC on December 21, 2007.

Defendant Wade acted with knowledge of the falsity of these statements and was seeking to retaliate against Goodman because of Goodman's disclosure of "mismanagement and fraudulent conversion of corporate funds" by Wade, Quan, Mills, and Garroni, by damaging his "reputation and legal career."  Id. ¶¶ 17, 26, 27. 28, 29, 32, 35, 36, 40, 43, 44, 45, 54, 55.

As the 14C filing was amended, the alleged defamatory statements went through several different iterations.  Each of the allegedly defamatory 14C's is attached, in relevant part, to the Declaration of Michael Zweig, Esq., dated May 21, 2008 ("Zweig Decl."), annexed hereto, as Exhibit 1.  For the Court's convenience, the first iteration and the last iteration (which was then filed as the "Definitive Information Statement") state the following (with emphasis added to indicate the language allegedly at issue):

January 4, 2008 – Amendment No. 1 to Schedule 14C Information Statement:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors.  Although the removal of the two directors is being effected without cause, it is motivated by the shareholders' lack of confidence in the business judgment of the two directors being removed.  Such lack of confidence is the result of recent conversations between the shareholders and the directors and the fact that based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.

Goodman Compl. ¶ 18 (emphasis added).

February 4, 2008 – Amendment No. 6 to Schedule 14C Information Statement:

> On December 21, 2007, record holders of 29,777,137 shares of our Common Stock, representing approximately 58% of such Common Stock outstanding as of December 21, 2007, executed and delivered a written consent providing for the removal without cause of two directors, Dr. Vincent Orza and Paul Goodman from their positions on our Board of Directors.  By removing Dr. Orza and Mr. Goodman, two of the independent directors currently on

the Board of Directors will be removed; *however, we have recently added two directors to our Board of Directors, both of whom are independent. Therefore, after such removal, three independent directors will remain on our Board of Directors.* <u>Although the removal of the two directors is being effected without cause, the consenting shareholders have expressed a lack of confidence in the business judgment of the two directors being removed. Such lack of confidence is the result of recent conversations among certain consenting shareholders and the directors regarding how to shut down the Company's business operations in a manner that would preserve the value of the Company's assets and share price. In forming their judgment, the consenting shareholders considered that, based upon their biographies and the above referenced conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry.</u>

Goodman Compl. ¶ 23 (emphasis and italics added).[3]

Goodman alleges that the 14C was defamatory in stating, among other things, that he was removed because: 1) the Consenting Shareholders expressed a lack of confidence in his business judgment; 2) the Consenting Shareholders considered, in forming their opinion, that he lacked prior experience managing companies in the media industry; and 3) the lack of confidence in Goodman was the product of recent conversations among Consenting Shareholders and directors regarding how to shut down the Company's business operations in a manner that would best preserve the value of the Company's assets and share price. Significantly, Goodman's biography, published in an earlier 14C filed by Broadcaster on April 11, 2007 [Marlow Decl., Ex. 3], does not mention that he has any experience in the management of media companies, nor does his complaint allege any such experience.

The theory of Goodman's defamation action is that Defendants' allegedly defamatory acts were in retaliation for his alleged "criticisms of management" and for disclosing

---

[3] While the italicized text appears in the filed version of Amendment No. 6, Goodman did not include this text in Paragraph 23 of his complaint, concerning this Amendment. Goodman's complaint does not reflect that he had removed or edited out this text. Goodman's complaint depicts the allegedly defamatory statements as appearing consecutively in the same particular paragraph of Amendment No. 6 to the 14C Information Statement.

"self-dealing transactions" involving Quan and Broadcaster. Affidavit of Paul Goodman in Support of Motion for Temporary Restraining Order, sworn to January 15, 2008 [Zweig Decl., Ex. 2] ¶¶ 10, 11, 12. According to Goodman, he was removed as a director and then defamed for: (1) demanding that management take drastic steps to curtail "pointless spending … for a failed [purchase of advertising traffic-based] business plan" (¶¶ 16-18); (2) protesting the Board's alleged failure to follow resolutions "requiring the termination of the company's business" (¶ 20); and (3) objecting to Quan's allegedly "continuing to employ Quan's wife and son in unnecessary positions" (¶ 20). Goodman further alleges (¶ 20) that there were Board votes to terminate all Broadcaster employees, which were ignored by the corporate officers, and that the Board's vote to pursue "other business opportunities" was not carried out.

One of the "other business opportunities" that Goodman alleges (¶ 22) involved the potential acquisition by Broadcaster of a company called JamNow – a company with which Michael Gardner and Baytree were affiliated. To thwart the acquisition of JamNow, Goodman alleges, and to "continue their scheme," defendants Wade, Quan and Mills "solicited other shareholders of Broadcaster to remove" Goodman (¶¶ 22-23), which removal was then disclosed in an allegedly defamatory manner in the Information Statement Broadcaster filed with the SEC.

That Broadcaster was asked by the SEC to make the more detailed disclosure to which Goodman now objects is a matter of record. By letter dated January 2, 2008, the SEC requested that Broadcaster "revise its December [21], 2007 disclosure to fully describe the facts and circumstances underlying [Goodman's and Orza's] removal." See SEC letter to Broadcaster counsel, dated January 2, 2008 [Marlow Decl., Ex. 1]. Indeed, Broadcaster's subsequent filings of Preliminary Information Statements followed its receipt of correspondence from the SEC (collectively attached to the Marlow Declaration as Exhibit 2), commenting on the prior filings

by Broadcaster and generally seeking clarification or elaboration.  See, e.g., SEC letter to Broadcaster counsel, dated January 8, 2008 (SEC requests that, given the "fact that Dr. Orza and Mr. Goodman are being removed as directors because shareholders lack confidence in their business judgment and because shareholders consider these directors to lack the requisite experience, … provide an analysis of your determination that their removal 'is being effected without cause.'"); SEC letter to Broadcaster counsel, dated January 10, 2008 (requesting "all material elements of the disagreement between the Company's Board of Directors and management over shutting down the Company's business operations."); and SEC letter to Broadcaster counsel, dated January 14, 2008 (seeking a "more complete description of the disagreements over the shutdown of the Company's business operations that occurred during your recent Board of Directors meetings.  This would include a description of each material disagreement and identification of the views of each of the participants in the Board meetings.").  Broadcaster's counsel ultimately eventually learned from an SEC representative that the SEC's comments and requests for clarification were in response to the SEC's receipt of correspondence from Paul Goodman.  See Marlow Decl. ¶ 5.

Gardner Defamation Action

Michael Gardner, a principal and owner of Baytree Securities, Inc., commenced a defamation action on March 3, 2008 against Broadcaster's chief executive officer, Martin Wade.  Less than three weeks earlier, Baytree had filed its action against Broadcaster, Mr. Wade, and others in the Southern District.  Similar to Goodman's defamation action, Gardner's action arises out of SEC disclosures made by Broadcaster following the removal by the Consenting Shareholders of Board Member Vincent Orza and the subsequent receipt by Broadcaster of a purported "resignation letter" from Orza, dated February 18, 2008.  Orza's letter and a February

22, 2008 letter from Broadcaster's CEO, Martin Wade, responding to Orza's unfounded charges were disclosed by Broadcaster, as required by law, as an exhibit to Broadcaster's Current Report Form 8-K, filed with the SEC on February 22, 2008 [Zweig Decl., Ex. 3]. Orza's resignation letter explicitly referred to the fact that it, and any reply, must be filed with the SEC.

In his defamation action, Gardner claims that the following "false and defamatory" statements in Wade's letter "damage[d]" his business reputation:

- Given your [Orza's] ties to Mr. Gardner, it comes as no surprise that you would defend him and help him transfer blame to others, now that it appears his plan to abandon the Company's revenue generating business model in favor of his social networking concept has failed.

- This plan [regarding over-spending of company assets], which you [Orza] reviewed, and which was urged on the Board by Mr. Gardner . . . .

- I imagine it must be nearly impossible for you to reject Mr. Gardner's self-serving demands on the Board given that he sits on the Board of Trustees of the same university where you are Dean of the Business School.

- Management understands that as a result of the decision to rescind the letter of intent, Mr. Gardner's company was deprived of the significant fees it would have received had the transaction closed; but management cannot make decisions that benefit Mr. Gardner or his company to the exclusion of all other shareholders.

Gardner Compl. ¶¶ 7 and 12. Gardner also conclusorily alleges that Wade knew these statements to be false and published them with malice, and that these statements "directly concern Plaintiff's effectiveness as an investor, consultant, manager, and his integrity as a shareholder, as well as his overall reputation as a businessman" and "falsely allege a general ignorance and lack of skill in his profession." Id. ¶¶ 8-12. However, Gardner does not contend that Wade's statement regarding Gardner's financial ties to "independent" director Orza was false, nor can he dispute that he has such "ties" to Orza, a successful and wealthy businessman. Gardner testified at his deposition (given in connection with Baytree's motion for a preliminary injunction) that he

is the financial manager for "some of" Orza's monies.  <u>See</u> Michael Gardner Dep. Tr. at 160 [Zweig Decl., Ex. 4].[4]

Gardner also served the defamation complaint in this action in an improper and unauthorized manner.  Gardner lured Wade, who is a New Jersey resident, into the jurisdiction by requesting that, because of Gardner's health issues and infirmities, Wade and others travel to Gardner's office at Baytree Securities in New York City for a settlement meeting held on March 5, 2008, ostensibly to discuss the issues raised by Gardner and Baytree in the <u>Baytree</u> action.  At the conclusion of this brief and unsuccessful settlement meeting, Wade was served, at Gardner's office, with a copy of the defamation complaint, by the Sullivan Gardner firm.  <u>See</u> Zweig Decl. ¶ 8.

## <u>**ARGUMENT**</u>

As demonstrated below, all of the causes of action asserted by Goodman and Gardner are incurably deficient and should be dismissed with prejudice.  Goodman and Gardner have not and cannot state a claim for defamation based upon statements contained in Broadcaster's SEC filings.  Goodman's claims for prima facie tort, negligence, and injurious falsehood are equally deficient.  The Goodman and Gardner actions should be dismissed for the additional reasons that defendants lack sufficient contacts with the State of New York to establish personal jurisdiction over them and have not received effective service of process.

---

[4] Gardner similarly testified at his deposition regarding financial ties to Paul Goodman, noting that Goodman is the trustee for a trust holding Broadcaster stock (in which Gardner holds an interest) and that Gardner made an interest-free $70,000 unsecured personal loan to Goodman within the past 12 months to assist Goodman with an urgent "personal matter."  Gardner refused, over objection, to answer questions regarding the reasons given by Goodman for needing the money so desperately.  <u>See</u> Michael Gardner Dep. Tr. at 92-94 [Zweig Decl., Ex. 4].

Alternatively, the Goodman and Gardner actions should be transferred to the District Court for the Central District of California, where the two other related actions are proceeding.

## I.    BOTH ACTIONS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM FOR DEFAMATION OR ANY OTHER COGNIZABLE CLAIM FOR RELIEF.

### A.    Standards on a Motion to Dismiss.

Federal Rule of Civil Procedure 8(a)(2), which applies here, requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, to resist a motion to dismiss, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1959, 1964-65 (2007).  In the context of a defamation claim, this standard "'require[s] enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"  Dworin v. Deutsch, 06 Civ. 13265, 2008 U.S. Dist. LEXIS 13655, at *7 (S.D.N.Y. Feb. 21, 2008) (Castel, J.) (quoting Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007)) (other citations omitted).  As interpreted by the Second Circuit, Bell Atlantic requires "a flexible 'plausibility standard,'" which obliges a pleader to amplify a claim with specific factual allegations "where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

In deciding a motion to dismiss, the court may consider the complaint, any documents incorporated therein by reference or integral to plaintiffs' allegations, and matters subject to judicial notice, such as the SEC filing at issue here.  See ATSI Communications v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Conradt v. NBC Universal, Inc., 536 F. Supp. 2d 380, 388 (S.D.N.Y. 2008).

**B.      Neither Goodman Nor Gardner States a Claim for Defamation.**

To plead an actionable libel claim under New York law,[5] a plaintiff must allege:

"(1) a written defamatory statement concerning the plaintiff; (2) publication to a third party; (3)

fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity

of the defamatory statement; and (5) special damages or per se actionability." Pisani v.

Westchester County Health Care Corp., 424 F. Supp. 2d 710, 715 (S.D.N.Y. 2006).

Furthermore, the false statement must "'tend[ ] to expose the plaintiff to public contempt,

ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking

persons, and to deprive him of their friendly intercourse in society.'" Rinaldi v. Holt, Rinehart &

Winston, Inc., 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 949 (1977) (citation omitted).

Determining whether a statement is defamatory requires an analysis of whether

the statements at issue are "reasonably susceptible to the defamatory meaning imputed to

[them]," and an assessment of not only the meaning of the words but also their context. See

Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997). The meaning of the words and their context

must be judged from the perspective of the intended audience. See Kaplan v. Banque Nationale

de Paris, 94 Civ. 3965, 1995 U.S. Dist. LEXIS 18885, 94 Civ. 3965 at *19-*20 (S.D.N.Y. Dec.

---

[5] New York substantive law applies to the motions to dismiss the Goodman and Gardner defamation actions. Because the basis for subject matter jurisdiction in these two actions is diversity, this Court should follow the choice of law rules of the forum state, New York. New York has adopted the "'interest analysis' test, which applies the substantive law of that state 'which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issues raised in the litigation.'" Arochem Int'l, Inc. v. Buirkle, 767 F. Supp. 1243, 1246 (S.D.N.Y. 1991) (Stanton, J.) (quoting Babcock v. Jackson, 12 N.Y.2d 473, 481 (1963), aff'd, 968 F.2d 266 (2d Cir. 1992). Both Goodman and Gardner were domiciled in New York at the time of the publication of the statements. Under New York choice-of-law rules "in defamation cases 'the state of plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." Lee v. Bankers Trust, 166 F.3d 540, 545 (2d Cir. 1999); see Arochem, 767 F. Supp. at 1247.

The application of New York law to these actions has no bearing on the propriety of their transfer, as California courts are fully capable of applying New York law. See Baytree Capital Assocs., LLC v. Quan, Nos. 08-1602 and 08-2480, 2008 U.S. Dist. LEXIS 32429, at *14 (S.D.N.Y. Apr. 18, 2008).

18, 1995) (Stanton, J.) ("[i]n determining whether a statement is susceptible of a defamatory meaning, the court should not 'interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous,' but should construe the words 'as they would be read and understood by the public to which they are addressed.'") (quoting Davis v. Ross, 754 F.2d 80, 83 (2d Cir. 1985)).

Even if the foregoing requirements are satisfied (and they are not here), allegedly defamatory statements are not actionable where they are protected by a qualified privilege. New York courts generally recognize that a qualified privilege arises "where a person makes a bona fide communication upon a subject in which he has an interest and the communication is made to a person having a corresponding interest." Sterling Interiors Group, Inc. v. Haworth, Inc., No. 94 Civ 9216, 1996 U.S. Dist. LEXIS 10756, at *75 (S.D.N.Y. July 29, 1996). New York courts have routinely applied this "common interest" privilege to statements made to regulatory agencies and to communications "between investors or shareholders and the corporations in which they invest." Konikoff v. Prudential Ins. Co., No. 94 Civ 6863, 1999 U.S. Dist. LEXIS 13501, at *47 (S.D.N.Y. Aug. 31, 1999), aff'd, 234 F.3d 92 (2d Cir. 2000). Absent a showing of malice by the plaintiff, allegedly defamatory statements protected by the common interest privilege are not actionable. See id. at *49 (granting defendant's motion for summary judgment where allegedly defamatory statements were included in a report to SEC and other agencies, defendant had a common interest with the SEC and a legal obligation to cooperate with the SEC, and plaintiff failed to show statements were made with malice). See also Zeevi v. Union Bank of Switzerland, No. 89 Civ. 4637, 1992 U.S. Dist. LEXIS 871, at *18 (S.D.N.Y. Jan. 29, 1992).

As demonstrated below, the defamation claims of Goodman and Gardner should be dismissed because the allegedly defamatory statements: (1) are clearly denoted, by their

words and context, as statements of non-actionable opinion, and not fact; (2) are not reasonably susceptible of a defamatory meaning; and (3) are contained in Broadcaster's 14C and Form 8-K filings with the SEC and, as such, are protected by a qualified privilege, which plaintiffs have not overcome by a pleading of malice.

      1.      **The Statements Complained of in the <u>Goodman</u> and <u>Gardner</u> Actions are Non-Actionable Expressions of Opinion.**

<u>Goodman Defamation Action</u>

Under New York law, and in most jurisdictions, an "expression of pure opinion is not actionable." <u>Steinhilber v. Alphonse</u>, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 903 (1986). As the New York Court of Appeals has stated, "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." <u>Mann v. Abel</u>, 10 N.Y.3d 271, 2008 WL 762262 (Mar. 25, 2008). <u>See also Steinhilber</u>, 68 N.Y.2d at 286, 508 N.Y.S.2d at 901 (statements of opinion "'false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions.'") (citation omitted). In New York, the "resolution of the fact/opinion issue is a matter for the court." <u>Levin v. McPhee</u>, 119 F.3d 189, 196 (2d Cir. 1997).

The New York Court of Appeals has set forth a three-factor test to determine the difference between fact and opinion, as follows:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to 'signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.'

Brian v. Richardson, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 350 (1995) (citation omitted).  In addition to determining the allegedly defamatory nature of statements by analyzing individual factual statements,

> 'courts must consider the content of the communication as a whole as well as its tone and apparent purpose' and in particular 'should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'

Mann v. Abel, 10 N.Y.3d 271 (2008) (citations omitted).

The statements in Broadcaster's 14C filings are, as a matter of law, non-actionable "pure opinion" because, as a textual analysis confirms, they are "statement[s] of opinion which [are] accompanied by a recitation of the facts upon which [they are] based."[6] Steinhilber, 68 N.Y.2d at 289, 508 N.Y.S.2d at 903. See also Ansorian v. Zimmerman, 215 A.D.2d 614, 627 N.Y.S.2d 706, 707 (2d Dep't 1995) (written statements of parents and student seeking teacher's replacement because she was essentially "incompetent" were "not reasonably susceptible of a defamatory meaning, and constituted personal opinion and rhetorical hyperbole rather than objective fact" and therefore warranted constitutional protection).

In the instant Goodman action, as in Mann, 2008 N.Y. LEXIS 681 at *5-*6, the content and context of the 14C statements undeniably convey to a reasonable reader a description of the opinions and views of the Consenting Shareholders concerning their reasons (even though "cause" was not required) for voting to remove Goodman as a director.  As the statements make

---

[6] Additionally, the 14C statements do not imply that the shareholders' opinions derive from the "existence of undisclosed facts," and as such remain non-actionable protected speech.  Levin, 119 F.3d at 197.  See Slade v. Met. Life Ins. Co., 255 A.D.2d 130, 131 679 N.Y.S.2d 390 (1st Dep't. 1998) (affirming motion to dismiss where statement as to reason why defendant terminated employee was not defamatory but rather a "protected expression of opinion based on a disclosed fact":  in relation to plaintiff's claim that the company actually fired him because "he was being used as a scapegoat to placate insurance regulators who were accusing defendant and its sales agents of deceptive sales practices," a "cause of action [by the plaintiff], if any, would not be for defamation.").

clear, their view of Goodman's business judgment – a subject inherently a matter of opinion and not capable of being proved true or false – played a role in this determination. Emphasizing the inherently subjective nature of the thought process underlying such a vote, each of the Broadcaster statements are expressly qualified with language, such as "[Mr. Goodman's] removal . . . is motivated by the shareholders' lack of confidence"[7] and "[in] forming their judgment."[8] The "tenor" of the statements "clearly signals the reader" that they are subjective depictions of some of the shareholders' reasoning in deciding to remove Goodman and not objective facts. See Mann, 2008 N.Y. LEXIS 681, at *6 (alleged defamatory statements in newspaper article were expressions of protected opinion where "tenor" of article about Rye Town Attorney, "including allegations that Mann [plaintiff] was a 'political hatchet Mann' who appeared to 'pull[] the strings,' clearly signals the reader that the piece is likely to be opinion, not fact.").

In summary, statements about the mindset or opinion of the Consenting Shareholders in seeking to remove Goodman, as a matter of law, simply are not reasonably susceptible of a defamatory meaning. See Rappaport v. VV Publ'g Corp., 163 Misc. 2d 1, 618 N.Y.S.2d 746, 751 (N.Y. Sup. Ct. 1994) ("question of bias or motivation is quintessentially subjective [because not true or false] and therefore may not form the basis for an action for defamation.") (citing Rinaldi, 42 N.Y.2d at 380-81, aff'd, 223 A.D.2d 515, 637 N.Y.S.2d 109 (1st Dep't 1996)). As in Rinaldi, Goodman "may not recover from defendants for simply expressing their opinions of his [] performance [as a director of Broadcaster], no matter how unreasonable, extreme or erroneous these opinions might be." Rinaldi, 42 N.Y.2d at 380-81 (opinions as to

---

[7] See January 4, 2008 14C Amendment No.1 [Zweig Decl., Ex. 1].

[8] See January 23, 2008 14C Amendment No. 4; January 2008 14C Amendment No. 5; February 4, 2008 14C Amendment No. 6; February 14, 2008 Definitive 14C [Zweig Decl., Ex. 1].

"fitness for judicial office" or "performance while in judicial office" not actionable for defamation).

Broadcaster explained its understanding that the shareholders based their opinion on, *inter alia*, "the fact that based upon their biographies and conversations, neither Dr. Vincent Orza nor Paul Goodman has any prior experience in managing companies in the media industry."[9]  Goodman, incidentally, claims that that statement contains factual errors.  Leaving aside the estimable question of how Goodman knows what motivated the consenting shareholders, any alleged falsehood about the speaker or a third party, as opposed to the plaintiff, is not actionable in any event.  Goodman can sue only for what was said about him – that he lacked certain experience and expertise – and those statements were clearly ones of non-actionable opinion.

### The Gardner Defamation Action

Similarly, in Gardner v. Wade, the statements in Martin Wade's letter published in Broadcaster's Form 8-K [Zweig Decl., Ex. 3], responding to Dr. Orza's resignation letter, are non-actionable expressions of "pure opinion," providing Wade's explanation and refutation of the "many misstatements and falsehoods" contained in Orza's letter.  Wade Ltr.¶ 1 [Zweig Decl., Ex. 3].  On their face, Wade's statements are directed to Orza's charges and express Wade's views regarding Orza's lack of independence and objectivity and close ties to Michael Gardner.  See Steinhilber supra.  The unambiguous declarations by Wade that he is expressing his subjective opinion appear throughout the letter, prefaced with telltale phrases such as "I believe" and "I imagine."  Wade Ltr. ¶ 2 [Zweig Decl., Ex. 3].  These provide a reader with the distinct

---

[9] The inclusion of the phrase (in Amendments 1-3 to the 14C statement) "the fact that" does not alter the analysis.  The phrase adheres not to the allegedly defamatory comment but to some of the bases for the shareholders' opinion.

indication that the statements are clearly opinions.  See Brian, supra, at 51.  Moreover, most of the statements are about Orza, not Gardner.

The statements in Wade's letter, such as those commenting on Orza's "ties to Gardner" asserting that "it comes as no surprise that you [Orza] would defend him and help him transfer blame to others;" and that "it must have been nearly impossible for [Orza] to reject Gardner's self-serving demands on the Board"[10] are at most "'rhetorical hyperbole'" or 'imaginative expression' or 'hypothesis'", and as such "cannot reasonably be interpreted as stating actual facts, [and therefore] are not actionable."  Belly Basics, Inc. v. Mothers Work, Inc., 95 F. Supp. 2d 144, 146-47 (S.D.N.Y. 2000) (granting motion to dismiss counterclaim for libel per se where press release did not assert objective facts, but rather a subjective opinion about whether the other party breached a settlement agreement)  (citing Levin and Milkovich).

Because the Wade letter discloses the facts upon which his statements of opinion are based and references specific sections of Orza's letter,[11] without implying undisclosed facts, the statements about which Gardner complains are unquestionably non-actionable expressions of Martin Wade's opinions, incapable of being proven true or false.  See Steinhilber and Brian, supra.  Wade's commentary as to the "unnecessary" nature of Dr. Orza's letter[12] and the "misstatements and falsehoods" contained therein are a clear reflection of his opinions concerning Dr. Orza's unfounded assertions.  Wade's statements unequivocally display his motivation and personal views which cannot provide the basis for a defamation claim.  See Rappaport supra; Wade Ltr. ¶¶ 1, 2, 4, 7 [Zweig Decl., Ex. 3].

---

[10] See, e.g., Wade Ltr. ¶¶ 2, 4, 6, 7 [Zweig Decl., Ex. 3].

[11] See Wade Ltr. ¶¶ 2, 3 [Zweig Decl., Ex. 3].

[12] Orza had been removed by vote of the shareholders; his subsequent purported "resignation letter" was wholly superfluous.

2.     **Statements in the <u>Goodman</u> and <u>Gardner</u> Actions are Not Capable of a Defamatory Meaning Because They Fail to Allege the Requisite Injury to the Plaintiffs.**

<u>The Goodman Defamation Action</u>

The crux of a claim for defamation is an injury to the plaintiff's reputation. <u>Pisani v. Westchester County Health Care Corp.</u>, 424 F. Supp. 2d 710, 715 (S.D.N.Y. 2006) (<u>quoting Celle v. Filipino Reporter Enters. Inc.</u>, 209 F.3d 163, 177 (2d Cir. 2000)). Goodman cannot fairly plead (other than conclusorily) that the 14C statements "affect [Goodman] in his trade, occupation, or profession." <u>Sterling Doubleday Enters. L.P. v. Marro</u>, 238 A.D.2d 502, 503, 656 N.Y.S.2d 676, 678 (2d Dep't 1997). To begin with, Goodman's "trade, occupation, or profession" is that of a lawyer. He is not a businessman nor does he state that he has experience in the management of media companies, either in his complaint or in the biography contained in Broadcaster's Definitive 14C Information Statement filed with the SEC on April 11, 2007 [Marlow Decl., Ex. 3].

Moreover, the statements in the 14C do not reference, much less impugn, his legal skills or abilities as a lawyer. The "'mere expression of unhappiness with plaintiff's fulfilling [] [job] duties," which encompasses Goodman's performance as a director of Broadcaster, cannot give rise to an action for libel per se. <u>Dworin v. Deutsch</u>, 06 Civ. 13265, 2008 U.S. Dist. LEXIS 13655, at *20 (S.D.N.Y. Feb. 21, 2008) (Castel, J.) (dismissing claims for libel and libel per se where defendant, in his book, was "expressing disapproval with plaintiff's [former president of defendant's company] approach to managing his employees." (quoting <u>Aronson v. Wiersma</u>, 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006 (1985)). As in <u>Dworin</u>, the statements concerning the Consenting Shareholders' opinion as to their "lack of confidence in the business judgment" of Goodman as a Broadcaster director, which arose from "conversations i) among certain consenting shareholders and the directors regarding how to shut down the Company's business

operations in a manner that would preserve the value of the Company's assets and share price," and ii) the expressed awareness of these shareholders that Goodman did not have "any prior experience in managing companies in the media industry",[13] are "not the type [of statements] that would tend to ruin a man's reputation." Dworin, at *20.

The Gardner Defamation Action

Gardner's claim similarly fails because the statements in Wade's letter do not constitute an "attack" on Gardner in the "conduct of or fitness for [his] profession,". . .relat[ing] to a 'matter of significance and importance' to the plaintiff's work." Horne v. Matthews, 97 Civ. 3605, 1997 U.S. Dist. LEXIS 14518, at *6 (S.D.N.Y. Sept. 24, 1997) (Martin, Jr., J.) (quoting Golub v. Enquirer/Star Group, Inc., 89 N.Y.2d 1074, 1076, 659 N.Y.S.2d 836, 837 (1997)).  The critical statements in Wade's letter that Gardner's "plan to abandon the Company's revenue generating business model in favor of his social networking concept has failed", citing Dr. Orza's ties to Gardner (not false), and "Gardner's self-serving demands" (Wade Ltr. ¶ 2 [Zweig. Decl., Ex. 3]) are not "incompatible with the proper conduct of the business, trade, profession or office itself."   Liberman, 80 N.Y.2d at 436 (indicating that statements of a "more general reflection upon the plaintiff's character or qualities" do not qualify as defamation per se).

Additionally, Wade's statements do not disparage Gardner as to his fitness for his profession as an investment banker and asset manager, which is how he describes himself on the website of Baytree Capital Associates, LLC,[14] nor do Wade's statements mark Gardner as incompetent.  See Clemente v. Impastato, 274 A.D.2d 771, 773, 711 N.Y.S.2d 71 (3d Dep't 2000) (recognizing that "publication of an untrue statement may be defamatory per se if it imputes incompetence, incapacity or unfitness in the performance of one's profession.").  Indeed,

---

[13] See Amendments 4-6 of the 14C and the Definitive 14C [Zweig Decl., Ex. 1].

[14] See http://www.baytreecapital.com/partners.php.

were the subject statements defamatory, <u>any</u> disclosures arguably critical of an individual's performance in a corporate setting would give rise to an action for defamation inhibiting discourse and the free flow of information.

At most Wade's statements reflect, on behalf of Broadcaster, frustration with Gardner's business plans for the company.  <u>See</u> <u>Dworin</u> <u>supra</u>.  Such statements do not "suggest improper performance of [Gardner's] duties or unprofessional conduct," and at best, only remotely touch upon his general character or qualities.  <u>Clemente</u>, at 773.

3.     **The Alleged Defamatory Statements are Protected by a Qualified Privilege.**

Plaintiffs' defamation claims also should be dismissed because the alleged defamatory statements are protected by a qualified privilege.  In <u>Goodman</u>, Broadcaster shared a common interest with shareholders in disclosing pertinent information to its shareholders, such as a written consent to remove certain directors, by publishing the 14C statement and its amendments thereto, required by law.  In <u>Gardner</u>, defendant Wade similarly had a common interest with the shareholder recipients of the 8-K SEC filing; in order to respond to former Broadcaster director Dr. Orza concerning Orza's misperceptions and wrongful accusations concerning Broadcaster's business.

Neither Goodman nor Gardner have adequately pleaded that the statements in their respective actions were made with the requisite "common-law malice" or "actual malice," necessary to overcome the qualified privilege.  "'Common-law malice is based on the traditional concept of spite or ill will, while constitutional malice or "actual" malice refers to publication of false material with knowledge of its falsity, or a high degree of awareness of the falsity.'"  <u>Ello v. Singh</u>, 531 F.Supp.2d 552, 576 (S.D.N.Y. 2007); <u>Liberman</u>, 80 N.Y.2d at 438 ("spite or ill will refers not to the defendant's general feelings about plaintiff, but to the speaker's motivation

for making the defamatory statements."). Pleading common-law malice requires the plaintiff to demonstrate that the defendant's "ill will" directed to the plaintiff was "'the one and only cause for the publication.'" Ello, 531 F.Supp.2d at 576, 585-86 (finding that plaintiff did not sufficiently plead either common-law malice or actual malice to overcome qualified privilege and ultimately holding that the defamation claims were "futile and may not go forward") (quoting Albert v. Loksen, 239 F.3d 256, 272 (2d Cir. 2001). For actual malice, the plaintiff would need to plead that the defendant "knew" the statements were false or that he was "aware of a likelihood of falsity." Ello, 531 F.Supp.2d at 577; Liberman, 80 N.Y.2d at 438.

### C.    GOODMAN FAILS TO STATE A CLAIM FOR PRIMA FACIE TORT

To allege a claim for prima facie tort, plaintiff must prove the following elements: "(1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful." Mackinder v. Schawk, Inc., 00 Civ. 6098, 2005 U.S. Dist. LEXIS 15880, at *40 (S.D.N.Y. Aug. 2, 2005). It is "'well-settled that any claim that is covered by a traditional tort cannot be the basis for a claim of prima facie tort – even if the traditional tort claims turn out not to be viable.'" Friends of Falun Gong v. Pacific Cultural Enter., Inc., 288 F. Supp. 2d 273, 284 (E.D.N.Y. 2003) (dismissing claim for defamation and in turn dismissing claim for prima facie tort where plaintiffs explicitly contend that the allegedly defamatory statements lead to their claim for prima facie tort and they only allege the same facts that they alleged as part of their unsuccessful claim for defamation. See id. at 285) (quoting Nevin v. Citibank, 107 F. Supp.2d 333, 346-47 (S.D.N.Y. 2000)), aff'd, 109 Fed. Appx. 442 (2d Cir. 2004).

Similarly, Goodman cites no new facts for his prima facie tort claim other than those cited in support of his defamation claim, and he specifically alleges that the publication of the allegedly defamatory statements caused the injury for which he seeks redress via his prima

facie tort claim.  See Goodman Compl. ¶¶ 42-47.  Additionally, Goodman distinctly fails to allege any special damages, as illustrated by his reliance on defamation per se to avoid the burden of such a specific pleading.  Goodman's prima facie tort claim is frivolous surplusage and must be dismissed.

### D.    GOODMAN FAILS TO STATE A CLAIM FOR NEGLIGENCE

It is settled New York law that a "party seeking recovery for an injury to reputation is claiming defamation, not negligence."  Four Directions Air, Inc. v. U.S.A., City of Syracuse and the Sensis Corp., 5:06-CV-283, 2007 U.S. Dist. LEXIS 72882, at *16 (N.D.N.Y. Sept. 30, 2007).  New York law holds that a "separate cause of action for what are essentially defamation claims should not be entertained."  Anayanwu v. Columbia Broadcasting System, Inc., 887 F. Supp. 690, 693 (S.D.N.Y. 1995).  Where, as here, the facts the plaintiffs alleges for a claim for negligence are "in essence, inseparable from the tort of defamation," the plaintiff is "relegated to any remedy that would have been available on that basis."  Butler v. Delaware Otsego Corp., 203 A.D.2d 783, 785, 610 N.Y.S.2d 664 (3d Dep't 1994) (dismissing, inter alia, claims for defamation and negligence).  Goodman's claim for negligence is essentially a repetition of his defamation claim, as both revolve around the publication of the allegedly false and defamatory statements.  See Goodman Compl. ¶¶ 48-52.  This claim therefore must be dismissed.  See Themed Restaurants, Inc. v. Zagat Survey. LLC, 21 A.D.3d 826, 801 N.Y.S.2d 38, 40 (1st Dep't 2005) (dismissing negligence action as duplicative where plaintiff's negligence claim stemmed from the same factual allegations as plaintiff's defamation claim and also alleged injury to reputation); Butler, 203 A.D.2d at 785.

### E.    GOODMAN FAILS TO STATE A CLAIM FOR INJURIOUS FALSEHOOD

The elements of injurious falsehood are as follows: "(1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages." Berwick v. New World Network Int'l, Ltd., 06 Civ. 2641, 2007 U.S. Dist. LEXIS 22995, at *47 (S.D.N.Y. Mar. 27, 2007). Here, Goodman again ritualistically repeats as the basis for his claim for injurious falsehood the same statements in Broadcaster's 14C Information Statement and the amendments thereto on which he bases his defamation claim. See Goodman Compl. ¶¶ 53-56. As Goodman's injurious falsehood claim is entirely duplicative of his defamation claim, which fails to state a claim, his claim for injurious falsehood must likewise be dismissed. See O'Brien v. Alexander, 898 F. Supp. 162, 172 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996).

## II.    IN BOTH ACTIONS, SERVICE WAS IMPROPER AND PERSONAL JURISDICTION IS ABSENT.

### A.    Lack of Personal Jurisdiction over Defendants Requires Dismissal of the Actions under Rule 12(b)(2).

Personal jurisdiction is lacking in New York over Broadcaster, a California corporation, the individual California residents and corporate entities named (albeit not served), in the Goodman action, and over Martin Wade, a New Jersey resident, in the Gardner action. While personal jurisdiction over the improperly named New York defendants in the Goodman action could arguably exist, none of these defendants have been served. *See infra* Part II.B. Critically, Goodman and Gardner are unable to meet even the minimal threshold pleading requirements for personal jurisdiction to overcome a motion to dismiss under 12(b)(2).

Goodman and Gardner cannot adequately allege personal jurisdiction based on CPLR § 302(a)(1) of the New York long-arm statute because, despite their conclusory assertions, none of these defendants "transact[] any business within the state or contract[] anywhere to

supply goods or services in the state." Neither CPLR § 302(a)(2) nor (a)(3) grants long-arm

jurisdiction for the "commi[ssion of] a tortious act" "within or without" the state of New York

where as here, the underlying gravamen of these two actions is for defamation. See Giro v.

Estevill, 96 Civ. 2258, 1998 U.S. Dist. LEXIS 1661, at *3 (S.D.N.Y. Feb. 11, 1998) (Stanton, J.).

When the defamatory statement itself serves as the basis for the "'transact[ion] of business'" in

New York based on CPLR § 302(a)(1), New York courts hold that "more than the libelous

statement must be made within the state" to achieve long-arm jurisdiction over the publisher of

the statement. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 248 (2d Cir. 2007). As the Second

Circuit stated:

> [w]hile no New York appellate court has yet explicitly analyzed a
> case of website defamation under the 'transact[ing] business'
> provision of section 302(a)(1), several federal district courts in
> New York have . . . [and] have concluded that the posting of
> defamatory material on a website accessible in New York does not,
> without more, constitute 'transact[ing] business' in New York for
> the purposes of New York's long-arm statute.

Id. at 250.

Additionally, Goodman and Gardner are unable to plead that any of the

defendants are subject to personal jurisdiction in New York pursuant to CPLR § 301 under the

rubric of "doing business" in New York. Defendants Broadcaster and the California residents, as

well as defendant Martin Wade, a New Jersey resident, have not engaged in a "continuous and

systematic course of doing business in New York", as the business of Broadcaster is conducted

in California. Digital Lab Solutions, LLC v. Stickler, 06 Civ. 6482, 2007 U.S. Dist. LEXIS

18396, at *14 (S.D.N.Y. Mar. 6, 2007) (Stanton, J.). As in Digital Labs, Broadcaster does not

maintain an office in New York, does not solicit business in New York, does not maintain any

bank accounts in New York and does not have any employees present in New York. See id. at

*15. Furthermore, because Gardner did not properly serve Martin Wade with the summons and

complaint when he was in New York, he cannot assert physical presence as the basis for personal jurisdiction over Wade. Accordingly, both <u>Goodman</u> and <u>Gardner</u> should be dismissed pursuant to Rule 12(b)(2) for the lack of personal jurisdiction over the defendants or a hearing held to resolve any disputed factual issues as to jurisdiction.

> **B.    Improper Service of Process of the Summons and Complaint in <u>Goodman</u> and <u>Gardner</u> Warrants Dismissal of the Actions Under 12(b)(5)**
>
> <u>The Goodman Defamation Action</u>

Federal Rules of Civil Procedure 4(h)(1), (3) and 4(e)(1) provide that plaintiff can achieve service of process upon a domestic corporation either by: "(1) delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, or (2) pursuant to the law of the state in which the district court is located." <u>M'Baye v. World Boxing Ass'n</u>, 429 F. Supp. 2d 652, 656-7 (S.D.N.Y. 2006). N.Y. CPLR § 311 mandates <u>personal</u> service upon a corporation to "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." <u>Id</u>. (emphasis added). Substitute service of process, as outlined in N.Y. CPLR § 308(2), is ineffective as service of process upon a corporation. <u>See</u> <u>Lakeside Concrete Corp. v. Pine Hollow Bldg. Corp.</u>, 104 A.D.2d 551, 551, 479 N.Y.S.2d 256 (2d Dep't 1984), <u>aff'd</u>, 65 N.Y.2d 865.

Goodman has utterly failed to file any affidavits of service with the Court, or to provide Defendants with copies of same, despite repeated requests from the defendants, and representations to this Court that he would do so. <u>See</u> May 5, 2008 Letter to the Court [Zweig Decl., Ex. 5]; and May 9, 2008 Letter to Paul Goodman [Zweig Decl., Ex. 6].

<u>The Gardner Defamation Action</u>

Service of the Complaint in this action was made on Martin Wade, a New Jersey resident, by Gardner's counsel, acting at Gardner's behest, on March 5, 2008.  Wade was present in New York solely for a settlement meeting relating to the <u>Baytree</u> action, and was served at the conclusion of the settlement meeting held at Michael Gardner's New York City office.  Such service was improper.  <u>See</u> Zweig Decl. ¶ 8.

There is a "bright-line prohibiting service of process where a plaintiff has induced a defendant to enter the jurisdiction for talks [such as settlement discussions], unless the plaintiff first warns the defendant before he enters the jurisdiction that he may subject himself to service, or gives the defendant an opportunity to leave the jurisdiction before service is made if settlement talks fail."  <u>The May Dep't Stores Co. v. Wilanksy</u>, 900 F. Supp. 1154, 1164 (E.D. Mo. 1995).  It is well-settled in New York that parties traveling from another jurisdiction to New York are "exempt" from service of process "while in attendance upon court," which has been broadly construed to cover all stages of a case – including settlement meetings.  <u>See</u> <u>Fun-Damental Too v. Hwung-Hsiang Hwung</u>, 97 Civ. 09,1997, U.S. Dist. LEXIS 7520, at *5, (S.D.N.Y. May 28, 1997) (<u>quoting</u> <u>Cabiri v. Assasie-Gyimah</u>, 921 F.Supp 1189, 1193 (S.D.N.Y. 1996), <u>aff'd</u>, <u>subnom</u>, Fun-Damental Too v. Gemmy Indus. Corp., 111 F. 3d 993 (2d Cir. 1997).

### III.    THE TWO DEFAMATION ACTIONS SHOULD, IF NOT DISMISSED, BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2008). The transfer analysis requires evaluation of: (1) whether the proposed transferee court is a proper forum in which plaintiff could have commenced the case there originally and (2) whether in light of the convenience of the parties and witnesses, in conjunction with the interest of justice, a transfer is warranted. Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

### A.    Unlike New York, the Central District of California is a Proper Forum for the Two Actions.

The determination of a proper forum where the action "might have been brought" requires venue to be proper in the transferee forum and for defendants to be subject to personal jurisdiction there. USA Interactive v. Savannah Air Center, LLC, No. 02 Civ. 3659, 2002 U.S. Dist. LEXIS 14476, at *2 (S.D.N.Y. Aug. 7, 2002) (Stanton, J.) (asserting that the "threshold question is whether the transferee district is one 'where venue might have been proper and where the defendant would have been subject to process.'" (quoting Dwyer v. General Motors Corp., 853 F.Supp. 690, 692 (S.D.N.Y. 1994))); see Baytree Capital Assocs.v. Quan, et al., 08 Civ 01602 and Goodman v. Broadcaster, et al., 08 Civ 02480 at *6 (S.D.N.Y. Apr. 18, 2008) (Stanton, J.).

With respect to the Goodman action, personal jurisdiction over Broadcaster may be maintained in the Central District of California because Broadcaster has its principal place of business in Chatsworth, California, and is thereby subject to process in California. There is also personal jurisdiction in the Central District of California over other named defendants Nolan Quan, Blair Mills, Aaron Brown and Andrew Garroni, as they are all California residents, and

over Willow Creek Capital Management and Trinidad Capital Master Fund Ltd., each with its principal place of business in California. Martin Wade, though a resident of New Jersey, is subject to personal jurisdiction and process in California as CEO and as a director of Broadcaster.[15]

Although Goodman has named each of the ten Consenting Shareholders who voted to remove him as defendants, it is quite plain that none of these parties are necessary or proper parties in the defamation action, which arises out of a securities filing made by Broadcaster, not the Consenting Shareholders. Indeed, from the face of Goodman's complaint, it is evident that none of these Consenting Shareholders "defamed" Goodman; he alleges no independent basis for liability in the complaint. The inclusion of such defendants – who are plainly unnecessary and improperly joined parties – simply because of their status as shareholders is improper and harassing, if not abusive. See Weinraub v. Glen Rauch Secs., Inc., 419 F. Supp.2d 507, 517-18 (S.D.N.Y. 2005) (imposing Rule 11 sanctions where claims against arbitrator defendants were "completely frivolous" and they "should never have been named" in plaintiff's lawsuit).

In contrast to New York, California is a jurisdiction in which personal jurisdiction exists over Broadcaster, the individual California residents and Martin Wade, Broadcaster's chief executive officer. As non-New York residents and businesses, these defendants do not "transact[] any business" within New York (N.Y. CPLR § 302(a)(1)). Further, N.Y. CPLR § 302(a)(2) and (a)(3) do not grant long-arm jurisdiction for the "commi[ssion of] a tortious act"

---

[15] To date, notwithstanding this Court's direction that he do so at the May 2, 1008 conference, Goodman has failed to produce any affidavits of service evidencing his service of the summons and complaint of any of these defendants.

"within or without" the state of New York where, as in the <u>Goodman</u> and <u>Gardner</u> actions, the underlying gravamen of these actions is for defamation.

Venue is also proper in the Central District of California for both actions, which may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C.§ 1391(a)(2) (2008). The SEC filings in this case were made by a corporation whose principal place of business is in California, which bears the closest relationship to the events alleged in the complaint.

**B.      In Light of the Related Actions Already in the Transferee Forum, the Interests of Justice, Judicial Efficiency, and the Convenience of the Parties and Witnesses Favor Transfer to the Central District of California**

In considering whether the proposed transfer will "promote convenience and fairness," <u>WellQuest Int'l, Inc. v. Genesis Intermedia.com, Inc.</u>, No. 00 Civ. 6558, 2001 U.S. Dist. LEXIS 16757, at *7 (S.D.N.Y. Oct. 18, 2001), courts consider the following factors: the convenience of the witnesses; the convenience of the parties; the location of the relevant documents and the relative ease of access to sources of proof; the locus of operative facts; the availability of process to compel the attendance of unwilling witnesses; the relative means of the parties; the forum's familiarity with governing law; the weight accorded to plaintiff's choice of forum; and trial efficiency and the interests of justice, based on the totality of the circumstances. <u>Columbia Pictures Indus., Inc. v. Fung</u>, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006) (Stanton, J.). Courts are vested with "broad discretion to balance these factors and to consider the evidence of convenience and fairness on a case-by-case basis." <u>Id.</u> at 309. The overarching goal of §1404(a), and an objective that is particularly critical here, is to "'prevent waste "of time, energy and money" and "'to protect litigants, witnesses and the public against unnecessary inconvenience and expense"'" <u>Hernandez v. Graebel Van Lines</u>, 761 F. Supp. 983, 986

(S.D.N.Y. 1991) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)) (other citations omitted).

>    1.    **Where there are Related Actions, Trial Efficiency and the Interests of Justice Are Compelling Factors.**

As courts have noted, the "'interests of justice' is a separate component of the Court's § 1404(a) transfer analysis" and "'may be *determinative* in a particular case even if the convenience of the parties and witnesses might call for a different result.'" Tucker Anthony, Inc. v. Bankers Trust Co., No. 93 Civ. 0257, 1994 U.S. Dist. LEXIS 128, at *26 (S.D.N.Y. Jan. 7, 1994) (citing Van Dusen, 376 U.S. at 625 and quoting Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986) (emphasis added)).   A key factor "traditionally considered [in determining] whether a transfer is warranted in the 'interest of justice' is whether *related* litigation can be consolidated by transference to a single forum." Id. (emphasis added) (granting motion to transfer when related actions, "on whose outcome the resolution of this action depends," were currently pending in the transferee forum.  Id. at *27).  As stated in Berman v. Informix Corp., 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998) "one of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district." (emphasizing that "'unless there are compelling reasons otherwise, there is no justification for separate trials in separate districts.'"    Id. (quoting Teleprompter Corp. v. Polinsky, 447 F. Supp. 53, 56 (S.D.N.Y. 1977))).

The Goodman and Gardner defamation actions are inextricably related to the Baytree and Goodman v. Broadcaster actions, which are now to be litigated in the Central District of California.  While the transferred actions are broader in scope, they plainly encompass much of the factual backdrop of the defamation actions, as demonstrated below.  The existence of these two related actions in the transferee forum, as this Court has observed in an earlier case,

overwhelmingly favors transfer because, as a "'general proposition, cases should be transferred to the district where related actions are pending.'" Nat'l Union Fire Ins. Co. v. Turtur, 743 F. Supp. 260, 263 (S.D.N.Y. 1990) (Stanton, J.) (concluding transfer to Southern District of Texas warranted given the significant impact of a related action pending in that forum, even in light of plaintiff's argument that most of its witnesses were located in New York and many of the events in question took place in New York).[16] This "general proposition" is particularly compelling when applied to the facts and circumstances presented on this motion in that, as set forth below, there is a substantial overlap between the discovery, collection of evidence and proof which will be required in the defamation actions and that required in the two transferred action.

For example, in the Goodman defamation action, Goodman maintains that there was a "conspiracy" by Wade, Quan and Mills to seize control of and waste Broadcaster assets (Compl. ¶ 20), that Goodman had objected to a business plan propounded by the defendants, and that the Board had refused Goodman's demands to curtail pointless spending on the plan – a plan which allegedly relied on the fraudulent purchase of "useless" advertising traffic – so that they could continue wasteful spending. Goodman's theory is that his removal from the Board by the Consenting Shareholders and Broadcaster's publication of the "defamatory" 14C Information Statement were in retaliation for Goodman's disclosure of mismanagement, fraudulent conversion and self-dealing. Goodman claims that evidence of such alleged retaliation will establish the legal malice necessary for his defamation claim.

---

[16] See also Varsity Spirit Fashions & Supplies, Inc. v. I.L.P., Inc., No. 03 Civ. 2069, 2003 U.S. Dist. LEXIS 21142, at *7 (S.D.N.Y. Nov. 20, 2003) (Stanton, J.) (authorizing transfer to the Northern District of California due to related action already in that forum, convenience of the witnesses and the negotiation of the parties' agreement in California and where "none of the other factors weighs in favor of one forum or another."); Vangarelli v. Witco Corp., No. 90 Civ. 6794, 1991 U.S. Dist. LEXIS 1721, at *7 (S.D.N.Y. Feb. 11, 1991) (Stanton, J.) (transferring action to forum with related actions for litigation efficiency and noting how "[t]ransfer may be appropriate even where it is unlikely that the related cases will be consolidated.").

These are, essentially, the same allegations made by Goodman in the BCL § 720 action, which was recently transferred by this Court to California. There, Goodman alleges, and must prove, among other things, that Quan, Wade and Mills have acted in concert to make payments to related shell companies and for unnecessary services, engaged in corporate waste, self-dealing, gross mismanagement and "useless" marketing practices, including the phony purchase of advertising (Goodman v. Broadcaster Compl. ¶¶ 14, 22). Part of Broadcaster's defense to this action will be to demonstrate, among other things, that the "new business model" adopted by Broadcaster was not fraudulent, that such model was urged on it by Michael Gardner, supported by his cohort Paul Goodman, whom Gardner controlled, and that the purchase of advertising traffic was a bona fide and acknowledged and accepted marketing practice, and that payments were not made to "related" companies.

The Gardner defamation action similarly involves proof overlapping with the evidence to be presented by both sides in the two related actions in California. According to Gardner's characterization of the statements he challenges as defamatory, Wade stated: i) that it was Gardner's plan to abandon a revenue generating model, ii) that the now criticized Board spending plan was approved by Gardner, and iii) that Gardner would have received significant fees if Broadcaster's transaction with JamNow (which Gardner championed) had proceeded. These are facts common to both actions and will necessarily be the subject of both discovery and trial in both actions. See Baytree Compl. ¶¶ 39, 40, 56, 62, 77, 78, 87, 96, 101, 108 and 115, and Goodman v. Broadcaster Compl. ¶¶ 14, 15, 17, 22 and 23.

The rationale underlying the transfer of related actions is straight forward: convenience and fairness. It is well-settled in the Second Circuit that "'[t]here is a strong policy favoring the litigation of related claims in the tribunal in order that pretrial discovery can be

conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.'" Columbia Pictures Indus., Inc. v. Fung, 447 F. Supp. 2d 306, 309 (S.D.N.Y. 2006) (Stanton, J.) (quoting Wyndham Assoc. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1968).

> Hence, the presence of related litigation in the transferee forum weighs heavily in favor of transfer, since litigation of related claims in the same tribunal results in 'more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest.

Nat'l Union Fire Ins. Co. v. Turtur, 743 F. Supp. at 263 (quoting Nieves v. American Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988). Cases need not be identical to warrant transfer:"'[t]he interests of justice require that the cases be related, not identical." Columbia Pictures Indus., Inc., 447 F. Supp. 2d at 309-10 (quoting Manufacturers. Hanover Trust Co. V. Palmer Corp., 798 F. Supp. 161, 167 (S.D.N.Y. 1992). As noted above, the cases are clearly related, as this Court has already determined. Notably, Courts in this District have granted motions for transfer where pending actions in the transferee forum "involv[e] the same facts, transactions, or occurrences" Jammys Int'l, Inc. v. Chips and Technologies, Inc., No. 89 Civ. 8331, 1990 U.S. Dist. LEXIS 10173 at *4 (S.D.N.Y. Aug. 6, 1990) (Stanton, J.), and where "related actions ''hinge upon the same factual nuclei.'" Coultman v. Nat'l R.R. Passenger Corp., 857 F. Supp. 231, 235 (S.D.N.Y. 1994) (quoting Durham Prod., Inc. v. Sterling Film Portfolio, Ltd., 537 F. Supp. 1241, 1244 (S.D.N.Y. 1992)).

Having named Broadcaster, Nolan Quan and Blair Mills as defendants in three of the four actions, and Martin Wade as a defendant in all four actions, it would be "manifestly unfair" to allow Goodman and Gardner to litigate against these defendants in courts on two separate coasts and by doing so impose an inconvenient and inevitably disjointed defense, and

redundant discovery process.  See Nat'l Union Fire Ins. Co. v. Chua, No. 90 Civ. 7491, 1991 U.S. Dist. LEXIS 4281, at *6 (S.D.N.Y. Apr. 4, 1991) (Stanton, J.).  In the absence of transfer, there will be identical discovery efforts involving requests for, and the production of, the same documents occurring in each forum, but with different timetables and with potentially different resolutions as to disputed issues.  In addition, many of the same witnesses and parties will be necessary for all of the actions, who will then be compelled, unless the two remaining actions are transferred, to testify at different depositions covering the same transactions.  Moreover, since liability for defamation will require a determination of the truth and falsity of the alleged defamatory statements, the defendants' liabilities in the Goodman and Gardner actions are directly intertwined with the judicial outcomes concerning the veracity of the underlying claims in the Baytree and Goodman v. Broadcaster actions.  See Columbia Pictures Indus., Inc., 447 F. Supp. 2d at 310 (granting transfer to the Central District of California in favor of judicial economy where a pending action in the transferee forum, which the same plaintiff commenced against different defendants involved "substantially similar" theories of liability); Jammys Int'l, Inc., 1990 U.S. Dist. LEXIS at *5 (transferring action to "avoid duplicative trials and possibly inconsistent determination of [defendant's] liability).  The interdependency of these four actions highlights the urgency of one forum deciding these issues to avoid inconsistent and harmful results.  The "overwhelming reality is that absent transfer of these actions, there will be two litigations in different fora involving the same parties and issues."  Nat'l Union Fire Ins. Co. v. Turtur, 743 F. Supp. at 264.  Similar to this Court's reasoning in the National Union case, "transfer of the New York actions ['to the Central District of California] would allow coordinated discovery, pre-trial and trial proceedings, and for resolution [of the parties' claims] .

. . in one forum, where those who allegedly committed the [defamation] . . . are present." <u>Nat'l Union Fire Ins. Co. v. Turtur</u>, 743 F. Supp. at 264.

Additionally, as one Southern District court recognized, **"[w]here all of the parties to multiple cases arising out of the same events are located in one forum, even when the actions may be treated as separate, the parties' ability to discuss comprehensive settlement may be significantly enhanced . . . ."** <u>Summit v. U.S. Dynamics Corp.</u>, No. 97 Civ. 9224, 2000 U.S. Dist. LEXIS 5453 at *10 (S.D.N.Y. Apr. 26, 2000). Practically speaking, the "dispersal of related actions in different districts hinders the possibility of mutually agreeable resolution and forces parties to expend their resources on continued litigation which ultimately may prove unnecessary." <u>Summit</u>, 2000 U.S. Dist. LEXIS 5453 at *11. The relatedness of all four actions, and the opportunity for the discovery in these actions to be coordinated, and to avoid inconsistent outcomes, weighs heavily in favor of their transfer to the District Court of the Central District of California.

## 2. Convenience of Witnesses.

The convenience of witnesses is always "an important factor in determining transfer motions." <u>Jammys Int'l Inc.</u>, 1990 U.S. Dist. LEXIS 10173, at *5-*6. "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." <u>Royal & Sunalliance v. British Airways</u>, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). It is significant that, given the similarity of the critical underlying events for all of the actions, all of the material witnesses in the <u>Goodman</u> and <u>Gardner</u> actions are also material witnesses in the <u>Baytree</u> and <u>Goodman v. Broadcaster</u> actions, particularly the named defendants in common among the actions. Defendants Broadcaster, Nolan Quan, and Blair Mills in the <u>Baytree</u> and <u>Goodman v. Broadcaster</u> actions, as well as Andrew Garroni, in <u>Baytree,</u> are all defendants in the <u>Goodman</u>

action and are either California residents or businesses. Martin Wade, a non-Californian who is a defendant in all four actions, and is the chief executive officer of a corporation based in California, has stated that California is a convenient forum for him and that it is, in any event, no less convenient than New York. See Wade Aff. dated March 28, 2008 (filed in connection with Broadcaster's motion to transfer Baytree, 08-1602 and Goodman v. Broadcaster, 08-2480, and hereby incorporated by reference, at ¶ 12).

In any event, the vast majority of the shared material witnesses, ten of seventeen, both parties and non-parties, are located in the Central District of California. While, "[t]he convenience of non-party witnesses generally carries more weight than the convenience of party witnesses." Herbert Ltd. P'Ship v. Elec. Arts, Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004), many of the shared material witnesses with salient knowledge of the transactions at the heart of the four actions, thirteen of seventeen, are either defendants named only in the transferred actions or non-parties to those actions. In effect, each of these specific material witnesses is a non-party in the Goodman and Gardner actions.

Without a transfer, material witnesses in the California and New York actions would need to travel to both California and New York to give "substantially similar testimony." See Jammys Int'l Inc., 1990 U.S. Dist. LEXIS 10173 at *6. Such a result should be disfavored.

### 3.    Locus of Operative Facts

The location of the operative events is another "'primary factor' in a transfer motion." WellQuest Int'l, Inc., 2001 U.S. Dist. LEXIS 16757, at *11. As discussed earlier, the transactions and occurrences underlying the allegedly defamatory statements in the SEC filings in both actions are the same events forming the locus of operative facts of the Baytree and Goodman v. Broadcaster actions, which lay in California. See Defendant Broadcaster's Memorandum of Law in Support of Motions to Transfer, incorporated by reference herein.

Neither Goodman nor Gardner plead in their complaint any relevant transactions or occurrences taking place in New York. Indeed, the only connection these cases have to New York is that plaintiffs (and no else) live there.

The <u>Goodman</u> and <u>Gardner</u> actions revolve around allegedly defamatory statements in Broadcaster's 14C, and in Martin Wade's letter attached to Broadcaster's Form 8-K. Given the location of its officers, the locus of operative facts for the drafting of Broadcaster's 14C is at Broadcaster's office in California – its principal place of business in California. As noted by CEO Wade in another contest, SEC filings constitute part of the "day-to-day operations of Broadcaster" [which operations] were conducted, and continue to be conducted, entirely from the Company's offices in California." <u>See</u> Wade Aff. at ¶ 9 (incorporated by reference).

### 4. Location of relevant documents and the relative ease of access to sources of proof

The overwhelming majority of the relevant documents from Broadcaster and "related companies" are physically located in California. <u>See</u> Defendant Broadcaster's March 28, 2008 Memorandum of Law in Support of Motions to Transfer, incorporated by reference herein; <u>Baytree Capital Assocs., LLC v. Quan</u>, No. 08-1602, No. 08-2480, 2008 U.S. Dist. LEXIS 32429 at *14 (S.D.N.Y. 2008) (Stanton, J.) ordering transfer of the <u>Baytree</u> and <u>Goodman v. Broadcaster</u> actions to California.

### 5. Convenience of the Parties

A "logical and relevant starting point is a consideration of the residence of the parties." <u>Hernandez</u> , 761 F. Supp. at 988 (S.D.N.Y. 1991). The vast majority of plaintiffs reside in California. Wade, a New Jersey resident, has attested that California is a convenient forum for him. <u>See</u> Wade <u>Aff</u>. in connection with first transfer motion, and incorporated by reference, at ¶ 12. Plainly, transfer of the actions to California would be significantly more

convenient for Nolan Quan, Blair Mills and Martin Wade, who could then avoid the needless waste of time and expense in traveling between two "distant" fora to mount defenses for four related actions.  See Jammys Int'l Inc., 1990 U.S. Dist. LEXIS 10173 at *6-*7.  In contrast, Goodman and Gardner (who is the principal of Plaintiff Baytree) are already going to be litigating in California, and cannot demonstrate any additional, material inconvenience from having these related cases heard there as well.

### 6.   Weight accorded to plaintiff's choice of forum

While a "plaintiff's choice of forum is normally accorded considerable deference, it is entitled to less weight where, as here, the case's operative facts have little or no connection with the chosen forum."  Nat'l Union Fire Ins. Co. v. CPMS Investments, 93 Civ. 5088, 5089, 5090, 1996 U.S. Dist. LEXIS 83, at * 6 (S.D.N.Y. Jan. 4, 1996) (Stanton, J.).  As stated above, the operative facts stemming from events have no connection with the plaintiffs' chosen forum of New York and in conjunction with the other factors, most importantly the related actions already in California, warrant a transfer to that forum.  See, e.g., Summit, 2000 U.S. Dist. LEXIS 5453 at *6 (emphasizing that "[w]hile the plaintiff's original choice of forum carries significant weight, the court notes also that the interests of justice generally 'favor[] the litigation of related claims in the same tribunal. . .'" (quoting Schneider v. Sears, 265 F.Supp. 257, 266-67 (S.D.N.Y. 1967))).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants Broadcaster, Nolan Quan, Blair Mills and Martin Wade respectfully request that the Court enter an order dismissing with prejudice, and without leave to replead, the <u>Goodman</u> and <u>Gardner</u> actions or, alternatively, transferring such   action to the Central District of California on the grounds that California is a more convenient and appropriate forum and such transfer is overwhelmingly in the interests of justice given that the related <u>Baytree</u> and <u>Goodman v. Broadcaster</u> actions are pending in that forum.

Dated: New York, New York
     May 21, 2008

LOEB & LOEB, LLP

HOWREY LLP

By: _____/s/_____

By: _____/s/_____
Michael P. Zweig (MPZ-5318)
Eugene Licker (EL-0334)
345 Park Avenue
New York, New York 10154
(212) 407-4000

Michael Armstrong (MA-8570)
153 East 53rd Street, 54th Floor
New York, New York 10022
212-896-6500

*Attorneys for the Defendants*
*Quan, Wade, and Mills*

*Attorneys for Defendant Broadcaster Inc.*