UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL GARDNER

                                    Plaintiff,                        Case No.: 08-cv-2850

            - against -

MARTIN R. WADE III,

                                    Defendants.
-----------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TRANSFER VENUE**

## TABLE OF CONTENTS

Preliminary Statement…………………………………………………………………6

Statement of Facts……………………………………………………………………..7

Argument

I.   DEFENDANT TRANSACTED BUSINESS IN NEW YORK AND PRESONAL
     SERVICE WAS PROPERLY EFFECTED, DEFENDANT'S NUMEROUS FALSE
     STATEMENTS IN AN ATTEMPT TO ARGUE OTHERWISE EVIDENCES BOTH
     HIS ERRONEOUS POSITION AND LACK OF CREDIBILITY……..………9

II.  DEFENDANT FAILS TO SUPPORT ITS ASSERTION THAT PLAINTIFF'S
     COMPLAINT FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF
     MAY BE GRANTED……………………………………………………..12

     A.  Plaintiff's complaint states facts sufficient to support every element of a claim for
         defamation…………………………………………………………..12

     B.  Defendant's claim that the defamatory statements asserted by Mr. Gardner are
         subject to a privileged as statements of opinion is erroneous as these statements
         are clearly statements of fact……………………………………..15

     C.  Defendant's erroneous claim that Plaintiff has failed to allege injury…........17

     D.  Defendant's allegation of privilege is incorrect and Defendant's malice negates
         any privilege which may apply in this matter...............................18

III. DEFENDANT'S CLAIM THAT SERVICE OF THE COMPLAINT WAS NOT
     PROPERLY MADE UPON HIM IS BASED UPON OUTRIGHT FALSE
     STATEMENTS OF WADE AND COUNSEL…………………………19

     A.  Defendant Wade regularly transacts business in the State of New York….. 19

     B.  Personal service was properly made upon Wade with his consent and the consent
         of his counsel, Mr. Zweig………………………………………….. 20

IV.  THE SOUTHERN DISTRICT OF NEW YORK IS THE PROPER VENUE
     FOR THIS ACTION AND THE DEFENDANT HAS NOT MET ITS BURDEN OF
     SHOWING THAT A BALANCE OF CONVENIENCE STRONGLY FAVORS
     TRANSFER……………..................................................................22

     A.  The Balance of Convenience Favors the Southern District of New York

and a Denial of the Instant Motion…………………………………………..23

*Convenience of the Witnesses*……………………………………………… 24

*Convenience of the Parties*……………………………………………… 26

*Location of Relevant Documents and Relative Ease of
Access to Sources of Proof*………………………………………………26

*Locus of the Operative Facts*……………………………………………27

*The Availability of Process to Compel the Attendance of
Unwilling Witnesses*…………………………………………………………...28

*Relative Means of the Parties*……………………………………………… 28

*The Forum's Familiarity with Governing Law*……………………………..28

*Weight Accorded to Plaintiff's Choice of Forum*………………………….. 29

*Trial Efficiency and the Interest of Justice*………………………………… 29

*Duplicative Discovery and Inconsistent Orders*……………………………30

B.  Defendant misapplies facts in order to obtain transfer............................30

Conclusion……………………………………………………………………… 33

# TABLE OF AUTHORITIES

*Cases*

Pisani v. Westchester County Health Case Corp. ………………………………12
    424 F. Supp 2d. 710, 715 (S.D.N.Y. 2006)

Hishon v. King & Spalding………………………………………………………13
    467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)

Geisler v. Petrocelli………………………………………………………………13
    616 F.2d 636, 639 (2d Cir. 1980)

Cruz v. Beto………………………………………………………………………13
    405 U.S. 319, 322, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972)

D. P. Enterprises v. Bucks County Community College……………………………13
    725 F.2d 943, 944 (3d Cir. 1984)

Mahone v. Waddle…………………………………………………………………13
    564 F.2d 1018, 1021 (3d Cir. 1977).

Clemente v. Impastato……………………………………………………………14, 17
    273 A.D.2d 771, 773, 711 N.Y.S.2d 71, 74 (3rd Dep't 2000)

Brian v. Richardson………………………………………………………….... 15
    87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 350 (1995).

Ello v. Singh………………………………………………………………….. 18, 19
    531 F. Supp. 2d 552 (S.D.N.Y. 2007)

Lieberman v. Gelstein……………………………………………………………18
    80 N.Y.2d 429, 590 N.Y.S.2d 857 (1992)

PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc. ………………………… 26
    138 F.3d 65, 72 (2d Cir. 1998)

Ford Motor Co. v. Ryan……………………………………………… ………………22, 29
    182 F.2d 329 (2d Cir. 1950)

Bassali v. Johnson Controls, Inc. …………………………………….....22, 23, 29
    No. 06 Civ. 4149, 2007 U.S. Dist. LEXIS 95143 (S.D.N.Y. 2008)

Frame v. Whole Foods Market, Inc. ………………………………………22, 24, 27, 29
    No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720 (S.D.N.Y. 2007)

George v. Ford Motor Co., …………………………………………………….. 28
    No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453 (S.D.N.Y. 2007).

Columbia Pictures Indus., Inc. v. Fung ………………………………….....22, 23, 29
    447 F.Supp.2d 306 (S.D.N.Y. 2006)

Herbert Ltd. P'ship v. Electronic Arts, Inc. ………………………………………...24
    325 F.Supp.2d 282 (S.D.N.Y. 2004)

Kirkland v. NY State Department of Correction …………………………………. 27
    358 F.Supp. 1349 (S.D.N.Y. 1973)

Berman v. Informix Corp.…………………………………………………………..31
    30 F. Supp 2d 653

Tucker Anthony, Inc. v. Bankers Trust Co.…………………………………………31
    No. 93 Civ. 0257, 1994 U.S. Dist. LEXIS 128

*Statutes*

CPLR Section 302(a)(1)……………………………………………………………20

28 U.S.C. §1404……………………………………………………….……...…22, 24

28 U.S.C. §1391……………………………………………………………………26

28 U.S.C. §1441……………………………………………………………………26

Plaintiff Michael Gardner ("Mr. Gardner") respectfully submits this memorandum of law in opposition to Defendant Martin Wade, III's ("Wade" of "Defendant") motion to dismiss or, in the alternative, transfer venue to the Central District of California.

## PRELIMINARY STATEMENT

The Defendant's motion should be denied in all respects as Mr. Gardner has clearly set forth facts sufficient to state a claim for defamation under New York law and further as the Southern District of New York is the proper venue for this action.

As set forth herein, the Defendant has not met his burden of establishing that Mr. Gardner has failed to sufficiently plead all elements of his claim for defamation. Wade made several specifically identified false statements concerning Mr. Gardner's competence and ability within his profession, knowing these statements were false when made, and made such statements with the intent of personally attacking and injuring Mr. Gardner and his business.

Further, the Defendant has not met his difficult burden of establishing an entitlement to a change of venue. A transfer to California would cause significant negative repercussions. Most significantly, the parties to this action are Mr. Gardner, a resident of the State of New York, and Wade, a resident of the State of New Jersey. Wade's attempts to offer irrelevant and, in any case, duplicative non-party witnesses as a basis for transfer of venue of this matter, we submit, is not persuasive.

## STATEMENT OF FACTS

Plaintiff is a professional investor and business consultant, whose business and livelihood depends on his reputation as a fair and effective consultant, manager, and shareholder. Plaintiff's equity interest in Broadcaster was obtained as a business venture, and is fairly representative of the nature of the Plaintiffs business.

On February 22, 2008, Broadcaster filed a Form 8-K with the Securities and Exchange Commission ("SEC") online Electronic Data Gathering and Retrieval system ("EDGAR"). Attached to the Form 8-K was a letter to a resigning Broadcast board member signed by the Defendant which contained several false and defamatory statements concerning Plaintiff ("Defamatory Letter").

Specifically, the statements were:

    (i)    "Given your ties to Mr. Gardner, it comes as no surprise that you would defend him and help him transfer blame to others, now that it appears his plan to abandon the Company's revenue generating business model in favor of his social networking concept has failed."

    (ii)    "This plan [regarding over-spending of company assets], which you reviewed, and which was urged on the Board by Mr. Gardner..."

    (iii)    "I imagine it must be nearly impossible for you to reject Mr. Gardner's self-serving demands on the Board given that he sits on the Board of Trustees of the same university where you are Dean of the Business School."

(iv)    "Management understands that as a result of its decision to rescind the letter of intent, Mr. Gardner's company was deprived of the significant fees it would have received had the transaction closed; but management cannot make decisions that benefit Mr. Gardner or his company to the exclusion of all other shareholders."

The foregoing statements were and are false and were known to the Defendant to be false at the time that he signed the Defamatory Letter.

These statements directly concern Plaintiff's effectiveness as an investor, consultant, manager, and his integrity as a shareholder, as well as his overall reputation as a businessman.  The statements falsely allege a general ignorance and lack of skill in his profession.

As a result of these statements, and similar statements made by Defendant, which the Defendant knew to be false at the time they were made, Plaintiff has suffered personal humiliation, mental anguish and damage to his reputation and standing in the business community in which he operates and conducts business.  These statements directly negatively implicated Plaintiff in his business community and dealings and as such amount to per se defamation.

**ARGUMENT**

**POINT I**

**DEFENDANT TRANSACTED BUSINESS IN NEW YORK AND PRESONAL SERVICE WAS PROPERLY EFFECTED, DEFENDANT'S NUMEROUS FALSE STATEMENTS IN AN ATTEMPT TO ARGUE OTHERWISE EVIDENCES BOTH HIS ERRONEOUS POSITION AND LACK OF CREDIBILITY**

In his moving papers, Wade makes numerous false statements of fact which this Court should consider in light of the claims asserted in this action. First, Wade argues that he does not transact business in the State of New York. As further discussed herein, this is contrary to both an SEC filing signed by Wade as well as his recent deposition testimony in the action of Baytree Capital Associates, Inc. v. Quan. Further, Defendant argues that service upon him was improper as he was tricked into accepting personal service within the jurisdiction. This is completely false and, as will be discussed below, both Wade and his counsel consented to his acceptance of service of the complaint within the State of New York. Finally, Wade argues that the instant litigation was manufactured by Mr. Gardner and Mr. Vincent Orza by Mr. Orza's actions of sending a resignation letter to Broadcaster, Inc. which called for a response thereby Wade responded with the statements noted in the complaint. As the Court will see, not only does Mr. Orza's letter not request, nor require, a response, the statements concerning Mr. Gardner are completely unnecessary and unresponsive to anything in Mr. Orza's letter.

Initially, Wade makes the argument in his moving papers that he does not transact any business within the state of New York. See Defendant's Memorandum of Law at pg. 26. However, this is completely false and inconsistent with other sworn statements made by Wade. On October 15, 2007, Wade signed and filed an SEC Form 10-KSB on behalf

of Broadcaster, in which he states "Baytree also provides a New York office for us which is used on a regular basis by our Chief Executive Officer, Mr. Martin R. Wade, III." SEC Form 10-KSB at 49 (emphasis added). A copy of the October 15, 2007 SEC Form 10-KSB is annexed to the Gardner Declaration as "Exhibit A". How Wade can argue that he does not "transact any business within the state" when his filing with the SEC states the exact opposite is inconceivable. Further, during his recent deposition in the Baytree action, Wade testified that he regularly transacted business at the Baytree offices approximately three times per week on various different matters in addition to work for Broadcaster, Inc. A copy of the relevant portions of Wade's Deposition are annexed to the Gardner Declaration as "Exhibit B". See "Exhibit B", 142:6-144:11.

Additionally, Wade asserts in his affirmation that the personal service made upon him of the complaint in this matter was improper because he was somehow induced to appear in New York with the offer of a settlement conference only to be tricked into accepting service by Mr. Gardner's counsel. See Defendant's Memorandum of Law at pg. 11 and 28. Nothing could be further from the truth and it is an outright falsehood for Wade, or his counsel Mr. Zweig, to assert otherwise. While present with counsel at the Baytree offices on March 5, 2008, our office confirmed with Wade that a lawsuit asserting claims for defamation had been filed in New York County Supreme Court. He was informed that we would be served with a copy of that complaint.[1] A copy of the complaint was then served upon Wade. Immediately upon completion of service counsel

---

[1] Plaintiff could not have tricked Wade into the jurisdiction for service due to a settlement meeting as Wade was specifically not served with the complaint in the Baytree action at the meeting. It should also be noted that though numerous individually named defendants in the Baytree derivative action were present at this meeting, Plaintiff did not serve any of the defendants named in that action. Had Plaintiffs sought to trick the defendants into appearing in the jurisdiction solely for the purpose of service, service would have been made on all defendants in both actions, particularly considering the Baytree action defendants were more difficult to serve then Wade in this action.

for Wade indicated his surprise and displeasure with the service as counsel stated he was unaware it would occur.  Despite the fact that service had been completed, due to Wade's counsel's statements of displeasure, Plaintiff, by was of counsel Brian Gardner, as a courtesy offered to withdraw the service and specifically asked for the pleading back and service would occur on Wade at a later date.  Mr. Zweig, and Wade, after discussing the matter in front of Plaintiff's counsel in the hallway of the Baytree offices, both expressly stated that such later service was not necessary and that they would accept the personal service which had just occurred.  Nothing more was ever said on the matter.  To the extent that a factual dispute relevant to this issue exists, and the Court determines resolution of the factual issue is necessary, we submit such should be resolved at a hearing where testimony is offered under oath.

Wade further argues that the instant litigation was somehow set up by Mr. Vincent Orza and Mr. Gardner through Mr. Orza's action in drafting a resignation letter and "explicitly" referring to the fact that it, and any reply, be filed with the SEC.  See Defendant's Memorandum of Law at pg. 10.  However, Mr. Orza's letter does not "explicitly" or even impliedly state any such thing.  Not only does Mr. Orza's letter not demand that it and any reply correspondence be filed with the SEC but Mr. Orza's letter does not even request, nor require, any response.  See "Exhibit 3" to Zweig Declaration dated May 21, 2008.  Wade's claims that Mr. Orza's letter was in some was a scheme to trick Wade into writing, and publishing, defamatory statements against Mr. Gardner is ridiculous.  It was Wade choice to draft a response to Mr. Orza's letter, and his choice to defame Mr. Gardner in that letter.

These misstatements, the most egregious of the many contained in the Wade moving papers, should indicate to the Court the Defendant's willingness to stretch the truth when it fits his purpose.

**POINT II**

**DEFENDANT FAILS TO SUPPORT ITS ASSERTION THAT PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED**

In its moving papers, Defendant argues that Mr. Gardner fails to assert facts which support a cause of action upon which relief may be granted. However, Gardner clearly sets forth every element of a claim for defamation in this complaint. Further, Defendant argues that: (i) his statements are not actionable as statement of opinion; (ii) Garnder fails to assert an injury as an essential element of a claim for defamation; and (iii) that his statements are protected by a qualified privilege. Each of these claims are entirely meritless. Each fails due to the facts as asserted in the complaint and the legal principles applicable to defamation matters

**A.    Plaintiff's complaint states facts sufficient to support every element of a claim for defamation.**

As stated by Defendant in his moving papers, a claim for defamation must allege: (1) a written defamatory statement concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability. Defendant's Memorandum of Law at pg. 13; quoting <u>Pisani v. Westchester County Health Case Corp.</u>, 424 F. Supp 2d. 710, 715 (S.D.N.Y. 2006). Gardner has

sufficiently pled each element of the defamation claim, as such Defendant's motion must be denied.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the nonmoving party. Cruz v. Beto, 405 U.S. 319, 322, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972). In addition, the Court must draw reasonable factual inferences from the pleader's complaint. D. P. Enterprises v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984); Mahone v. Waddle, 564 F.2d 1018, 1021 (3d Cir. 1977).

Here, as to the pleading of the elements of defamation, it is without controversy that Gardner has sufficiently alleged the first two elements, i.e. (i) a written defamatory statement concerning himself, and (ii) the publication of that statement to a third party. Here, Wade makes in his letter dated February 22, 2008, a copy of which is annexed to the Zweig Declaration at "Exhibit 3", several statements which directly attack and injure Mr. Gardner, his standing and reputation in his business field, as well as his business itself. These statements were made public to not only Broadcaster, Inc. shareholders but anyone with access to a computer with the filing of his February 22, 2008 correspondence along with Broadcaster's Form 8-K also dated February 22, 2008.

Therefore, the first two elements of the claim for defamation are satisfied and not disputed.

Mr. Gardner similarly satisfies the third and fourth elements of pleading a defamation claim noted above by stating in the complaint that the statements made by Wade were false and that Wade knew each statement to be false at the time they were made. See "Exhibit B" to Mr. Gardner Declaration, Summon and Complaint at paragraphs 7-10.[2]

Finally, as discussed below, the damages element of this action are satisfied by both special damages, which are pled in the complaint, as well as the fact that Wade's conduct give rise to per se actionability. The complaint alleges that as a result of the defamatory statements of Wade, Gardner has and will suffer actual harm to his effectiveness as an investor, consultant, manager, and his integrity as a shareholder, as well as his overall reputation as a businessman. The statements falsely allege a general ignorance and lack of skill in his profession. "Exhibit B" to Gardner Declaration at paragraph 9. Additionally, Mr. Gardner clearly states in the complaint that Wade made the statements noted knowing those statements were untrue at the time they were made and that such statements would impute incompetence, incapacity or unfitness in the performance of his profession. See "Exhibit B" at paragraphs 7-10. Therefore, Wade's statements are actionable per se. *See* Clemente v. Impastato, 273 A.D.2d 771, 773, 711 N.Y.S.2d 71, 74 (3rd Dep't 2000)(recognizing that "publication of an untrue statement may be defamatory per se if it imputes incompetence, incapacity or unfitness in the performance of one's profession.").

---

[2] We must note that while Defendant Wade moves for dismissal of the instant complaint based upon the content of the pleading, he fails to even include the pleading as an exhibit to his motion papers.

Accordingly, the allegations in the complaint are wholly sufficient to support the defamation claim. Therefore, Defendant's motion to dismiss the complaint based upon Wade's allegation that Gardner has failed to state a cause of action upon which relief may be granted must be denied in its entirety.[3]

**B.     Defendant's claim that the defamatory statements asserted by Mr. Gardner are subject to a privilege as statements of opinion is erroneous as these statements are clearly statements of fact.**

In his moving papers, Wade claims that the statements he made, as noted in the complaint, are not actionable as they are protected statements of opinion. See Defendant's Memorandum of Law at pgs. 15-19. However, Wade is mistaken as these statements are clearly statements of fact, and not subject to the protection afforded to statements of opinion.

As noted by Wade in his moving papers, New York has established a three-factor test to determine the difference between fact and opinion. That three-factor test asks (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely opinion. Brian v. Richardson, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 350 (1995).

---

[3] It is Plaintiff's contention that though the remainder of Defendant's arguments are not appropriate for a motion to dismiss, but rather should be asserted as part of a motion for summary judgment or at trial as they go well beyond discussing the sufficiency of the pleading. In an abundance of caution, Plaintiff shall address each argument in turn.

Here, the statements made by Wade, as set forth in the complaint, allege that it was Gardner's plan to abandon the Company's revenue generating business model in favor of his social networking concept, and that that concept was pushed upon the company by Mr. Gardner and Mr. Orza. These are clearly stated as fact by Wade. The meaning of these statements are very clear. It is without argument that the business of Broadcaster was a failure. The company has been reduced to an existence where its present goal is to maintain enough revenue to keep the company on life support. Exhibit B to Gardner Declaration, 133:6-134:3. Clearly, from Wade's statements, he has placed the blame squarely upon Mr. Gardner, not by opinion but by the fact that the plan that failed was his. Further, these statements by Wade can easily be proven false through the offering of minutes of board meetings, records concerning votes of the board of directors, as well as the depositions testimony which will be taken during the discovery phase of this matter.

In fact, Wade admits that his statements in his February 22, 2008 correspondence are statements of fact. In his moving papers, as part of a ridiculous argument that he cannot be liable for defamation as he was forced to draft the defamatory letter based upon Mr. Orza's letter of February 18, 2008, Wade claims that he was forced to respond to Mr. Orza's letter to provide "explanation and refutation of the 'many misstatements and falsehoods' contained in Orza's letter." See Defendant's Memorandum of Law at pg. 18. If Wade was exchanging opinion for opinion then he would not be correcting "misstatements and falsehoods."

Further, Wade argues that as his statements contain "telltale" phrases such as "I believe" and "I imagine" then these statements must be opinion. However, quite

dramatically, only one of the statements noted in the complaint contains this "telltale" language.  Therefore, the absence of this "telltale" language from the remaining three statements evidences that Wade did not intend to utter these statements as opinion but rather fact (just as a reader would understand them to be).

**C.    Defendant's erroneous claim that Plaintiff has failed to allege injury.**

As stated above, the damages element of this action is satisfied by both special damages, which are pled in the complaint, as well as the fact that Wade's conduct give rise to per se actionability.

As stated in the complaint, Gardner, as a result of the defamatory statements of Wade, has and will suffer actual harm to his effectiveness as an investor, consultant, manager, and his integrity as a shareholder, as well as his overall reputation as a businessman.  The statements falsely allege a general ignorance and lack of skill in his profession.  "Exhibit B" to Gardner Declaration at paragraph 9.

Additionally, Gardner clearly states in the complaint that Wade made the statements noted in the complaint knowing these statements were untrue and that such statements would impute incompetence, incapacity or unfitness in the performance of his profession.  See "Exhibit B" at paragraphs 7-10.  Therefore, Wade's statements are actionable per se.  *See* Clemente v. Impastato, 273 A.D.2d 771, 773, 711 N.Y.S.2d 71, 74 (3rd Dep't 2000).

Given that Mr. Gardner has alleged damages sufficient to maintain a cause of action for defamation, as well as the fact that Wade's comments are actionable per se,

Defendant Wade's motion to dismiss the complaint based upon a failure to plead a cause of action upon which relief may be granted must be denied in its entirety.

**D.    Defendant's allegation of privilege is incorrect and Defendant's malice negates any privilege which may apply in this matter.**

In his moving papers, Defendant alleges that the statements noted by Gardner in the complaint are not actionable as defamatory statements as they are protected by a qualified privilege of common interest. See Defendant's Memorandum of Law at pg. 22. However, as acknowledged by Defendant, any such privilege is overcome by a showing of common-law or actual malice. Both such forms of malice are pled in this matter (and we submit will later be found).

Common-law malice is based upon the concept of spite of ill will which refers to the speaker's motivation for making the defamatory statements. *See* Ello v. Singh, 531 F. Supp. 2d 552 (S.D.N.Y. 2007); *see also* Lieberman v. Gelstein, 80 N.Y.2d 429, 590 N.Y.S.2d 857 (1992). Here, the complaint alleges, Wade knew these statements to be false and were stated with the intent to harm Gardner's business reputation. As such, malice is properly pled and Defendant cannot avoid the allegations with a claim of a qualified privilege. Wade had absolutely no other reason to include the statements about, and references to, Gardner then to embarrass, injure, and humiliate him. Given that no other purpose existed for the publication of these statements, which could have been excluded from any response to Mr. Orza's letter, the qualified privilege of common interest claimed by Defendant does not apply. *See* Ello at 576.

Further, Defendant's attempted reliance on the common interest privilege is overcome by the pleading and presence of actual malice. Actual malice is defined as the publication of false statements with knowledge of its falsity, or a high degree of awareness of the falsity. Id at 576. Here, Wade, as the C.E.O. and director of Broadcaster, was clearly aware that the business plan formulated for Broadcaster was not the idea, and not initiated at the recommendation of, Mr. Gardner. No was it Gardner who led this company to its current poor financial condition. In fact, the Defendant would have been privy to all of the information which Gardner claims will show that the statements made by Wade are false. Given that Wade made these statements with full knowledge that those statements were false when made the qualified privilege of common interest claimed by Defendant does not apply. *See* <u>Ello</u> at 576. Regardless, Wade's alleged mental state or knowledge here, is not a proper basis upon which to decide a Rule 12 motion to dismiss.

Given that Defendant Wade's statements are not protected by a qualified privilege, Defendant Wade's motion to dismiss the complaint based upon a failure to plead a cause of action upon which relief may be granted must be denied in its entirety.

### POINT III

**DEFENDANT'S CLAIM THAT SERVICE OF THE COMPLAINT WAS NOT PROPERLY MADE UPON HIM IS BASED UPON OUTRIGHT FALSE STATEMENTS OF WADE AND COUNSEL**

**A.    Defendant Wade regularly transacts business in the State of New York**

Wade makes the argument in his moving papers that he does not transact business within the State of New York, therefore, service may not be made upon him under New

York State's long arm jurisdiction statute, CPLR Section 302(a)(1). See Defendant's

Memorandum of Law at pg. 25-26. However, On October 15, 2007, Wade signed and

filed an SEC Form 10-KSB on behalf of Broadcaster, in which he states "Baytree also

provides a New York office for us which is used on a regular basis by our Chief

Executive Officer, Mr. Martin R. Wade, III." SEC Form 10-KSB at 49 (emphasis

added). A copy of the October 15, 2007 SEC Form 10-KSB is annexed to the Mr.

Gardner Declaration as "Exhibit A". Further, during his recent deposition, Wade testified

that he regularly transacted business at the Baytree offices approximately three times per

week on various different matters in addition to work for Broadcaster, Inc. "Exhibit B"

to Gardner Declaration, 142:6-144:11. Therefore, even had service not been properly

made upon Wade while he was present within the jurisdiction, Defendant clearly satisfies

the "doing business" requirement of New York State's long arm statute.


   **B.      Personal service was properly made upon Wade with his consent and the
             consent of his counsel, Mr. Zweig.**

       Wade asserts in his affirmation that the personal service made upon him of the

complaint in this matter was improper because he was somehow induced to appear in

New York with the offer of a settlement conference only to be tricked into accepting

service by Gardner's counsel. See Defendant's Memorandum of Law at pg. 11 and 28.

Nothing could be further from the truth and it is an outright falsehood for Wade, or his

counsel Zweig, to assert otherwise.

       While present at the Baytree offices on March 5, 2008, our office confirmed with

Wade that a lawsuit asserting claims for defamation had been filed in New York County

Supreme Court. Wade stated that he was well aware of the lawsuit. He was informed that we would be serving a copy of that complaint. It was counsel's understanding that Wade had previously agreed to accept service of the complaint when he appeared at the Baytree offices. The summons and complaint was served upon Wade on March 5, 2008 at Baytree's offices (the same office he had used three days a week for business). Immediately upon completion of service, counsel for Wade, Mr. Zweig, indicated his displeasure stating he was unaware such service would occur. Despite the fact that service had been completed, our office, by way of Brian Gardner, in the presence of Wade, offered to Zweig to withdraw the service and to serve Wade at a later date. Gardner stated in sum and substance, that if it was a problem then Wade should give back the pleading and our office would service it otherwise. Zweig and Wade expressly stated that such other service was not necessary and that Wade would accept the personal service made upon him at Baytree's offices. He then left still holding the summons and complaint. The issue was never raised again until the instant papers. Assuming, arguendo, that Wade had in fact been tricked into appearing in the jurisdiction, which he was not, and had Wade not expressly stated that he would accept service prior to our service of him, which he did, Defendant Wade's statement in his counsel's presence and his counsel's statement that their client agreed to accept service of the complaint waives any right of Defendant Wade to now object to service of the complaint upon him. Moreover, it should be noted that no trick occurred. It was Wade, with the suggestion of Mr. Nolan Quan, who suggested that they come to Baytree's offices to discuss the settlement of the Baytree action. Only the pleading in the instant matter was served upon

Wade, as this was counsel's understanding of the prior agreement, and service in the

Baytree action occurred at a later date.

Given that Defendant Wade was properly served with the complaint in this action

in person, while within the State of New York, Defendant's motion to dismiss based upon

his allegation that service was improper and personal jurisdiction is absent, must be

rejected.


### POINT IV

**THE SOUTHERN DISTRICT OF NEW YORK IS THE PROPER VENUE FOR THIS ACTION AND THE DEFENDANT HAS NOT MET ITS BURDEN OF SHOWING THAT A BALANCE OF CONVENIENCE STRONGLY FAVORS TRANSFER**

Pursuant to 28 U.S.C. §1404(a), a party may seek transfer of venue "[f]or the

convenience of the parties and witnesses." The moving party has the heavy burden of

making a "clear cut and convincing showing" of its entitlement to a transfer, Columbia

Pictures Indus., Inc. v. Fung, 447 F.Supp.2d 306, 309 (S.D.N.Y. 2006), and a "court

should not disturb a plaintiff's choice of forum unless the defendants make a clear and

convincing showing that the balance of convenience favors the defendants' choice."

Frame v. Whole Foods Market, Inc., No. 06 Civ 7058, 2007 U.S. Dist. LEXIS 72720,

*10 (S.D.N.Y. 2007); *see also* Bassali v. Johnson Controls, Inc., No. 06 Civ. 4149, 2007

U.S. Dist. LEXIS 95143, *1-2 (S.D.N.Y. 2008) (quoting *Ford Motor Co. v. Ryan*, 182

F.2d 329, 330 (2d Cir. 1950) (stating that "[t]he moving party has 'the burden of making

out a strong case for transfer.'"); Columbia Pictures Indus., Inc., 447 F.Supp.2d at 309

("Absent a clear cut and convincing showing by defendant that the balance of

convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside" (citations omitted)).

To satisfy its burden, a movant must establish (1) that the case could have been commenced in the proposed transferee district and (2) that "the transfer promotes convenience and justice." Bassali, 2007 U.S. Dist. LEXIS 95143, *2.  Here, the Defendant has not made the required "clear cut and convincing showing" that a transfer to the Central District of California is "strongly" favored.  Columbia Pictures Indus., Inc., 447 F.Supp.2d at 309.

A.    **The Balance of Convenience Favors the Southern District of New York and a Denial of the Instant Motion.**

In order to determine whether the transfer would promote convenience and justice, courts may consider the following factors:

(1)    the convenience of the witnesses;
(2)    the convenience of the parties;
(3)    the location of relevant documents and the relative ease of access to sources of proof;
(4)    the locus of the operative facts;
(5)    the availability of process to compel the attendance of unwilling witnesses;
(6)    the relative means of the parties;
(7)    the forum's familiarity with governing law;
(8)    the weight accorded to plaintiff's choice of forum; and
(9)    trial efficiency and the interest of justice, based on the totality of the circumstances.

Columbia Pictures Indus., Inc., 447 F.Supp.2d at 309.  "There is no rigid formula for balancing these factors and no single one of them is determinative." Bassali, 2007 U.S. Dist. LEXIS 95143, *3 (quoting Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000).

*Convenience of the Witnesses*

The convenience of the witnesses is "the most important factor in considering a §1404(a) motion to transfer." Herbert Ltd. P'ship v. Electronic Arts, Inc., 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004). The convenience of non-party witnesses is generally regarded as a more important factor than convenience of the parties. *Id.* In evaluating this factor, "a court does not merely tally the number of witness who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.* In this case, the convenience of the witnesses factor weighs heavily in favor of the Plaintiff.

In moving for a transfer of venue, the movant is required to identify potential material witnesses and provide a general statement of the substance of their expected testimony. Frame, 2007 U.S. Dist. LEXIS 72720, *13-14. A party may not "artificially inflate the number of witnesses to be inconvenienced by listing witnesses whose testimony is not material." *Id.* at 14 (quoting NBA Props., Inc. v. Salvino, Inc., 2000 U.S. Dist. LEXIS 3799, *20 (S.D.N.Y. 2000)).

In his moving papers, Wade identifies numerous parties with ties to California whom he claims are necessary material witnesses. However, even a cursory review of this list reveals that it contains numerous immaterial witnesses and those witnesses which do have relevant information are unduly cumulative so as to raise the question as to how Defendant intends to offer the testimony of these witnesses at trial.

The issues in this defamation action are simply whether the statements made by Defendant Wade are false and whether he knew those statements were false when made.

On issues such as whether Mr. Gardner is the person who formulated and executed Broadcaster's failed business model, testimony of Broadcaster's securities counsel, outside vendors and non-employees are completely useless, though Wade identified these persons as material witnesses.  The only true material witnesses are the parties, Mr. Gardner a resident of New York and Wade a resident of New Jersey, as well as current and former corporate officers and members of the board of directors.  If you remove all of the truly non-material witnesses, such as Broadcaster's securities counsel, outside vendors and non-employees, then Defendant has only identified five former officers and directors of Broadcaster as material witnesses.  Again, these parties all contain the same knowledge and their testimony would be duplicative.

Moreover, four of the five members of the Board of Directors of Broadcaster, Inc. during the relevant time period work in, reside near, or prefer New York City as a venue. Mr. Goodman resides in New York City.  Mr. Orza has stated his preference for New York City. *See* Orza Declaration annexed to Gardner Declaration as "Exhibit D" at ¶6. Mr. Wade lives in New Jersey. Mr. Richard Berman, a Broadcaster Board member, lives in Connecticut, with an office in New York City. Another member of the Board is Mr. Bruce Galloway, the former Chairman of the Board of Directors of Broadcaster, is a resident of New York. Mr. Galloway is expected to testify regarding his first hand knowledge of the conduct of the defendant board members and the company which caused his resignation.

As set forth in the Gardner Declaration, at this time, Plaintiff intends to call only these five witnesses in addition to Mr. Gardner and Wade.  None of those witnesses are

residents of California and all reside in New York, New Jersey or Connecticut or prefer New York as the forum for this action.

Further, as to Defendant Wade, the issue of the suitability New York as a venue has already been decided by the removal of this matter from the Supreme Court of New York to the United States District Court for the Southern District of New York.  PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 72 (2d Cir. 1998) ("[T]he removal statute provides that venue is proper in the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a)[.] Moreover, the removal statute, and not the ordinary federal venue statute, 28 U.S.C.A. § 1391 . . . governs venue in removed cases.") (citation omitted).

### The Convenience of the Parties

Clearly, with Mr. Gardner a resident of New York, and Wade a resident of New Jersey, the most convenient choice of forum is the Southern District of New York. Though Defendant has argued to the contrary, this attempt to change venue is simply a ploy by Wade to drive up the litigation costs incurred by Mr. Gardner in the hopes that it becomes too expensive for Mr. Garnder to maintain the action.

### Location of Relevant Documents and Relative Ease of Access to Sources of Proof

The Defendant cannot show any inconvenience related to the location of relevant documents.  The only documents which may be relevant to the instant matter are copies of meeting minutes and correspondence between various witnesses.  Surely, these documents are not so voluminous so as to require moving the entire action to a different venue.  "Access to documents and other proof is not a persuasive factor in favor of transfer without proof that the documents are particularly bulky or difficult to transport."

Frame, 2007 U.S. Dist. LEXIS 72720, *16-17.  In this case, Defendant cannot show that it would be difficult to transmit documents to New York.

***Locus of the Operative Facts***

The locus of operative facts is as much situated in New York as it is in California. Initially, there can be little dispute that the work of the Board of Directors was centered in New York.  As detailed in the Declarations submitted as part of the papers submitted in the derivative actions, copies of which are annexed as Exhibits "D", "E" and "F" to the Gardner Declaration, the meetings of the Board of Directors were conducted in Broadcaster's office in New York, and involved the participation of a majority of the Board in person at the New York office.  "Exhibit D" to Gardner Declaration at ¶ 4, Goodman Declaration annexed as "Exhibit E" to the Gardner Declaration at ¶ 10-11, and Michael Gardner Declaration annexed as "Exhibit F" to the Gardner Declaration at ¶ 7. Only Board Members Orza and Mills participated telephonically, Mr. Orza from Oklahoma and Mr. Mills from California. The fact that Board management was always in New York is established by the fact that when Mr. Orza sought to attend a Board meeting, he went to New York, not California. "Exhibit D" to Gardner Declaration at ¶ 5. Therefore, decisions of the Board to adopt the company business plan were made in New York and those are the very decisions which Wade claims were made at the behest of Mr. Gardner.

Further, Broadcaster maintained an office in New York which was used "on a regular basis" by its CEO.  This alone provides grounds for denying the motion to transfer venue.  Kirkland v. NY State Department of Correction, 358 F.Supp. 1349, 1351 (S.D.N.Y. 1973) (holding that despite the fact that defendants would be inconvenienced

without a transfer of venue, the defendants maintenance of an office in the current district constituted reason to deny the motion to transfer).

***The Availability of Process to Compel the Attendance of Unwilling Witnesses.***

As noted above, without commenting further on the cumulative nature of Defendant's witness list, Plaintiff and Defendant have identified the same number of material witnesses. Any issue concerning the availability of process to compel attendance of unwilling witnesses will be identical for each party whether the action is venued in New York or California. Should this case be transferred to California, Mr. Gardner would be placed in the same position as Defendant is with venue currently placed in New York. Further, all of the witnesses identified by Defendant are co-workers and business associates. The likelihood of Defendant having any difficulty obtaining the appearance of these witnesses is remote.

In any event, this issue is not dispositive. To the extent that a witness is unwilling, his or her testimony may be obtained and admitted by deposition. <u>George v. Ford Motor Co.</u>, No. 03 Civ. 7643, 2007 U.S. Dist. LEXIS 61453 (S.D.N.Y. 2007).

***Relative Means of the Parties***

Both parties are successful businessmen with the means to litigate this matter in either venue.

***The Forum's Familiarity with Governing Law***

It is anticipated that United States Courts in both New York and California will be familiar with governing law.

*Weight Accorded to Plaintiff's Choice of Forum*

A "court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors the defendants' choice." Frame v. Whole Foods Market, Inc., No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720, *10 (S.D.N.Y. 2007); *see also* Bassali v. Johnson Controls, Inc., No. 06 Civ. 4149, 2007 U.S. Dist. LEXIS 95143, *1-2 (S.D.N.Y. 2008) (quoting Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950) (stating that "[t]he moving party has 'the burden of making out a strong case for transfer.'"); Columbia Pictures Indus., Inc., 447 F.Supp.2d at 309 ("Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside" (citations omitted)).

Here, the Plaintiff chose New York precisely because of the forum's strong connection with the case's operative facts and his place of residence. As set forth in detail above, the Plaintiff's claims arise out of and stem from the management decisions made by the board of directors, the executive management of the company, and the various misrepresentations regarding the expenditures of money. All of these actions took place largely in New York.

Accordingly, the Plaintiff's choice of venue should be afforded significant deference as the situs of many of the acts complained of in this case, and as such should not be disturbed.

*Trial Efficiency and the Interest of Justice*

Finally, judicial economy and the interest of justice are served by maintaining the action in the Southern District of New York. This is an action by a New York resident,

against a New Jersey resident who regularly works in New York. The plaintiff has chosen this venue, which is the site of the operative facts, his residence, Defendant's place of business, and in close proximity to Defendant's residence. It is in the interest of justice that such an action be permitted to remain in this venue and that disputes between parties so situated not be shipped clear across the country based upon the location of inflated witness lists and false pretenses.

Accordingly, the interest of justice favors maintenance of the action in the Southern District of New York.

### *Duplicative Discovery and Inconsistent Orders*

Defendant argues in his moving papers that if the instant matter is not transferred to the Central District of California then duplicative discovery, and inconsistent orders, may result. It should be noted that the document discovery in this action will be limited to, as noted above, copies of meeting minutes and correspondence between various witnesses. Even assuming that these same documents are produced in the Baytree matter, the amount of material to be produced is not so voluminous so as to require the transfer of the entire action. Further, as the issues in the instant matter and the derivative actions, as discussed above, are wholly different, the likelihood of inconsistent rulings on discovery is surely remote.

### B.    **Defendant misapplies facts in order to obtain transfer**

In his moving papers, Wade argues that this instant matter should be transferred to the Central District of California based upon the fact that the two previously

transferred actions, and the instant action, are related cases. However, the case law cited by Wade shows that this argument is erroneous.

As support for this assertion that the cases noted above are related actions, Wade cites to various case law which he claims is dispositive on the issue. However, the case law cited by Defendant reveals that though the transferred cases and the instant matter involve some similar facts, they are not sufficiently related so as to warrant transfer. In Berman v. Informix Corp., 30 F. Supp 2d 653, the Court found transfer appropriate while holding that "unless there are compelling reasons otherwise, *there is no justification for separate trials in separate district*." (emphasis added). It appears that Defendant makes the argument that the instant matter, and the derivative actions noted above, should be tried together. This certainly stretches the similarities between the cases too far, and even Defendant stops short of actually directly making that assertion.

Further, Defendant cites to Tucker Anthony, Inc. v. Bankers Trust Co., No. 93 Civ. 0257, 1994 U.S. Dist. LEXIS 128, noting that Court's holding that transfer and consolidation of cases is appropriate when the outcome of one matter is dependent on the resolution of the other. Here, Defendant has made no motion to consolidate these cases, and rightly so, as such a motion would be misplaced. However, Defendant does argue, without any explanation, that the resolution of the instant matter is dependent upon the resolution of the derivative actions. This is unsupported by the facts and entirely untrue.

At issue in the derivative action is, inter alia, whether the corporate officers, directors, and majority shareholder of Broadcaster, Inc., through various corporate entities named as defendants, looted millions of dollars in assets from the company in order to enrich themselves at the expense of the corporation and its shareholders.

31

At issue in this defamation action is whether Wade's statements having nothing to do with looting of the company, were false, e.g. that it was Gardner's plan that failed. The resolution of the derivative action, namely whether or not the Broadcaster, Inc. officers, directors, and majority shareholders, including Wade, stole funds from the company, is not determinative of that issue.

To this same end, Defendant's argument that the noted cases must all be venued in the Central District of California so that "inconsistent results can be avoided" is similarly misplaced. As noted above, the cases at issue involve separate issues. There cannot possibly be an inconsistent outcome in these matters. It is entirely acceptable, from a legal standpoint, to have the Defendant be found liable for defamatory statements that is was Mr. Gardner who developed and recommended the business model which led to the destruction of Broadcaster, Inc. while not being liable for any scheme to convert, waste, or steal corporate assets of Broadcaster, Inc. A converse result is similarly reasonable in that the Defendant is not liable for defamation, as Mr. Gardner did develop and recommend the business model for Broadcaster, Inc., but was liable for converting, wasting and stealing corporate assets of Broadcaster, Inc. which ultimately led to the destruction of the company. Further, it is legally cognizable to find that the Defendant is liable in both actions, or neither. Clearly, inconsistent decisions is not an issue in these matters and the outcome of one action is not dependent on the other.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Michael Gardner respectfully requests that the

Court enter an Order denying the motion to dismiss the complaint and the application to

transfer venue of Defendant Martin R. Wade, III.

Dated:  New York, New York
        June 5, 2008




                              Respectfully submitted,



                              By: _____S/_____
                              Brian Gardner (BG 0006)
                              Sullivan Gardner PC
                              Attorneys for Plaintiff
                              475 Park Avenue So.
                              33rd Floor
                              New York, New York 10016
                              (212) 687-5900